## BLYTH-FARCO CO. v. FREE et al.

No. 2673. Decided January 22, 1915. Rehearing Denied May 8, 1915 (148 Pac. 427).

1. PRINCIPAL AND SURETY—BOND—LIMITATION OF SURETY'S LIABILITY. Although where a bond is given insuring the performance of a contract both instruments should be construed together to determine the scope of the obligation assumed by the surety, nevertheless such obligation may be specifically defined and limited in the bond itself, regardless of the provisions of the contract secured. (Page 238.)

2. PRINCIPAL AND SURETY—BOND—CONSTRUCTION. Where the bond whereby a surety secured the performance of a contract specifically placed a limit upon such surety's undertaking, by setting out the defaults for which it should be liable, the only difference between the provisions of the contract and those of the bond being a clause that the surety should not be liable for personal injuries to any person or persons, it was clear that such clause was purposely inserted, and that the understanding and intention of the parties was that the surety be liable only for the defaults for which it specifically assumed liability in the bond, irrespective of the provisions of the contract secured. (Page 239.)

3. PRINCIPAL AND SURETY—BOND OF SURETY COMPANY—CONSTRUCTION. Sureties are favored by the law; but, while a surety's contract will not be extended beyond its express terms by construction, nevertheless, as against a surety company executing bonds for profit, when the intention of the parties is once ascertained, the bond will be construed neither strictly nor liberally, but so to effectuate such intention.[1] (Page 239.)

---

[1]*Daly* v. *Old*, 35 Utah, 83, 99 Pac. 460, 28 L. R. A. (N. S.) 463; *Smith* v. *Bowman*, 32 Utah, 43, 88 Pac. 687, 9 L. R. A. (N. S.) 889.

4. BONDS—CONSTRUCTION. To ascertain the intention with which a bond was executed, recourse must be had to the whole instrument, and proper effect given to every word, phrase, and sentence. (Page 239.)

5. BONDS—CONTRACT FOR BENEFIT OF THIRD PERSON—BENEFICIARY'S RIGHT TO SUE—ACTION BY MATERIALMAN AGAINST SURETY ON CONTRACT. A surety company executed a bond securing the performance of a contract to construct a tunnel, and providing that if the contractor should keep the terms of the contract as recited in the bond the obligation should be of no effect. A materialman sued the contractor and the surety on the former's failure to pay. The provisions of the bond were such that it did not appear to have been made for the benefit of any parties other than the corporation for which the tunnel was to be built. *Held*, that the plaintiff had no right of action against the surety, since, although the third person for whose benefit a contract was made may maintain an action thereon, nevertheless it must appear from the provisions of such contract itself that it was made for the benefit of the plaintiff, either as an individual or as a member of a contemplated class.[2] (Page 242.)

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

Action by the Blyth-Fargo Company against J. S. Free and others.

Judgment for plaintiff. Defendants appeal.

REVERSED AND CAUSE REMANDED, with directions to dismiss.

*King, Nibley & Farnsworth* and *T. Marioneaux* for appellants.

*Snyder & Snyder* for respondent.

FRICK, J.

The Blyth-Fargo Company, a corporation, hereafter called "respondent," commenced this action in the District Court of Wasatch County against Free & Taylor, a co-partnership,

[2]*Montgomery* v. *Rief,* 15 Utah, 595, 50 Pac. 623; *Brown* v. *Markland.* 16 Utah, 360, 52 Pac. 597, 67 Am. St. Rep. 629; *Smith* v. *Bowman,* 32 Utah, 33-39, 88 Pac. 687, 9 L. R. A. (N. S.) 889.

hereafter styled "contractor," and against the Guardian Casualty & Guarantee Company, hereafter called "appellant," to recover upon a bond given by said contractor as principal and appellant as surety to the Snake Creek Mining & Tunnel Company, hereafter designated "company." The bond was given pursuant to a certain contract by the terms of which said contractor agreed to construct a certain tunnel to be used for drainage and other purposes and for the construction of which respondent furnished the material sued for in this action. The respondent recovered judgment against the contractor and also against the appellant upon the bond aforesaid for the value of said material, and the latter alone appeals.

The appellant insists that the court erred in entering judgment upon the bond against it for the reason that under the terms and conditions thereof the "respondent has no right to maintain an action thereon." Upon the other hand, respondent contends that the bond was given for the benefit of all those who may have furnished labor or material to the contractor for the construction of the tunnel aforesaid. The record discloses that the contractor entered into a contract with said company to construct said tunnel, which was to be about 14,350 feet in length, and for the construction of which the contractor was to receive $25.16 per linear foot. Under the contract and specifications, which were made a part thereof, the contractor was to furnish all the material and perform all the labor necessary to construct and complete said tunnel, and the company was to provide the power and machinery specified in the bond, which we will set forth hereafter. The specifications are made a part of the contract, and hereafter we shall refer to the contract only, although the particular· provision referred to may be a part of the specifications.

It was provided in the contract that:

"The contractor shall be required to furnish a satisfactory bond in the sum of twenty thousand ($20,000.00) dollars to insure the payment of all contracts or liabilities and expenses growing out of the construction of said tunnel· under the contract, repairs, machinery, maintenance, electric energy, etc."

Also that:

"The contractor shall promptly pay all sub-contractors, materialmen, laborers and other employees as often as payments are made to it by the company, and in the event at any time of its failure so to do, the company may retain from all subsequent estimates and pay over to said sub-contractors, materialmen, laborers and other employees such sums as may from time to time be due to them respectively. Before final settlement is made between the parties hereto for work done and material furnished under this contract, and before any right of action shall accrue to the contractor against the company therefor, the said contractor shall furnish evidence satisfactory to the engineer of the company that the work covered by this contract is free and clear from all liens for labor and materials and that no claim then exists against the same for which any lien could be enforced."

Pursuant to the contract, the appellant entered into a bond which contained the following provisions:

"Whereas, the firm of Free & Taylor, co-partnership, entered into a certain contract with specifications thereto attached and marked 'Exhibit A,' said specifications being made a part of said contract, with the Snake Creek Mining & Tunnel Company for the construction of the Snake Creek Drainage and Transportation Tunnel, which said contract and specifications bears date of 12th day of April, 1910, and contains the following clauses and conditions, to wit:

"Clause 8 (of specifications) General: The company will furnish:

"(a) One five-drill Sullivan air compressor and receiver, with compressor house, and the necessary electrical equipment for operating said compressor.

"(b) Electric power in quantity sufficient for use in driving the tunnel; the contractor to pay actual cost of the power consumed.

"It being understood that the company does not assume any responsibility in the furnishing of power, but simply agrees to give the contractor the benefit of its contract now in force with the Snake Creek Power Company.

"Clause 10 of (specifications) Other Provisions:

"The contractor shall be required to properly care for and

maintain, in first-class condition, all machinery furnished by the company, and all damages thereto, other than ordinary wear, shall be paid for by the contractor.

"The contractor shall be required to furnish a satisfactory bond in the sum of twenty thousand dollars ($20,000.00), to insure the payment of all contracts or liabilities (for which the party of the second part the 'Company' shall be liable, with the exception of liability on account of personal injuries to any person or persons), and expenses growing out of the construction of said tunnel under the contract, repairs, machinery, maintenance, electric energy, etc.

"Now the condition of this obligation is such that if the said Free & Taylor, a co-partnership, shall well and truly keep and perform the terms and conditions of the said contract as recited herein, on its part to be kept and performed *and shall indemnify and save harmless the said Snake Creek Mining & Tunnel Company as expressly stipulated and limited in said clauses herein recited,* then this obligation shall be of no effect, but otherwise, it shall remain in full force and effect. Provided, however, that this obligation shall in no wise be considered or be construed to be a penalty bond for failure of the said firm of Free & Taylor to perform the contract made with Snake Creek Mining & Tunnel Company on the 12th day of April, 1910, *nor shall it cover or refer to any matter or thing relating to said contract and specifications except such clauses thereof as are recited in this bond made a part thereof."* (Italics ours.)

The clause which we have included within parenthesis is not contained in the contract, although it is incorporated into the bond. It will be observed from that portion of the bond which we have italicized that the obligations assumed by appellant are specifically limited to the provisions of the contract which are set forth in detail in the bond itself, and to no others.

The question which confronts us, therefore, is: What is the scope of the bond entered into by appelant when construed in connection with those portions of the contract which are incorporated into the bond?

Respondent contends that, where a bond is given to insure

the performance of a certain contract, in order to determine the scope of the obligation assumed in the bond, the terms and conditions contained in both instruments must be construed and considered together. This, no doubt, is sound doctrine; but it is also true that the obligation assumed by the obligor may, nevertheless, be defined and limited in the bond itself regardless of the provisions of the contract, and, if the party for whose benefit the bond is given is not satisfied with the limitation, he is not bound to accept it, but may insist upon a bond which strictly conforms to the terms of the contract. Where the obligee named in the bond, however, accepts it with all of its limitations and restrictions, he cannot, we apprehend, afterwards insist that the terms of the contract, rather than those of the bond, shall control, but he is bound by the limitations contained in the bond; and this, no doubt, is so also as against one who claims to be a beneficiary under the bond. The authority cited and relied on by the respondent, namely, 5 Cyc. 757, makes it quite clear that, although generally speaking, both the contract and bond must be construed together, yet, when the bond restricts the right to look to certain portions of the contract only, then only those which are thus selected can be considered. It is there said:

"It may be generally stated that a bond may incorporate, by reference expressly made thereto, other contracts, papers, or written instruments, or it may be conditioned for the performance of certain specific agreements set forth in such instruments, so as to embody the same therein as a part of the obligation thereof with all the stipulations, limitations, or restrictions mentioned in the referred-to papers, in which case the bond and the papers referred to should be read together and construed as a whole, although, if only specific parts of another contract be referred to, only so much of said writing is incorporated as is evident the parties intended to embody or rely upon."

If, therefore, we have recourse to the terms of the bond given in this case, it is apparent just what part of the provisions of the contract were intended to be made a part of the bond. It is unreasonable therefore to contend that, although certain portions of the contract were eliminated from the bond, yet we must still consider the whole contract for the

purpose of determining the scope of the obligations contained in the bond. Appellant, like all others competent to contract, had the right to enter into just such a contract as it saw fit and to limit its obligations in any particular it deemed proper, and, if the company or contractor were dissatisfied with the limitations contained in the bond as executed, either, or both, could refuse to accept it. The question therefore arises: Does this bond as written authorize the respondent to maintain an action against appellant for material furnished to the contractor which was used in the construction of the tunnel?

Counsel for appellant insist that the bond in question is an indemnity bond pure and simple, and was intended to indemnify and save harmless the company for any damages it might suffer in case the contractor did not, in the particulars specified in the bond, comply with its con- **2, 3, 4** ditions. According to the terms of the bond, it was given to "insure the payment of all contracts or liabilities *for which the party of the second part, the 'Company' shall be liable, with the exception of liability on account of personal injuries to any person or persons,* and expenses growing out of the construction of said tunnel under the contract, repairs, machinery, maintenance, electric energy, etc." (Italics ours.) Respondent contends that, inasmuch as appellant copied a certain provision contained in the contract into the bond, it was bound to copy it correctly, or suffer the consequences. In order to avoid any difficulty in that regard, however, the court made what is termed a finding of fact wherein it found that the particular provision found in the contract respecting what the bond shall cover was "incorrectly copied in such bond" in the particular we have already indicated, and further found that it was the intention of the parties to said bond that it should insure "the payment in full of all persons who should furnish labor or materials for use in said tunnel." We remark that there are neither pleadings nor evidence to sustain any such finding. What is called a finding of fact may, however, be regarded merely as the construction which the District Court placed upon the contract and the provisions of the bond when all were construed and considered together. If therefore the court's construction is correct, appellant is

not prejudiced by the so-called finding, although it could not
be sustained as a finding of fact under the pleadings and
evidence. Upon the other hand, if the construction is not
the right one, respondent can gain no advantage from the
fact that the court denominated what merely amounts to a
legal conclusion a finding of fact. In matters of this kind we
must have regard for the substance of things rather than the
form in which they are stated.

We think the court's construction of the bond is too broad.
It certainly cannot be questioned that appellant, like all
other persons, had a right to limit and define the precise ob-
ligations it was willing to and did assume, regardless of the
terms of the contract. Of course, if appellant had, merely
in general terms, guaranteed the performance of the contract,
then whatever was provided for therein would have to control
the bond. Appellant, however, did not do this, but it, in spe-
cific terms, placed a limit upon its undertaking. Moreover,
it is apparent from the instruments themselves that no mis-
take occurred in incorporating certain portions of the con-
tract into the bond. So far as the contract was adopted, and
undoubtedly so far as it was intended to be adopted, it was
stated in the language of the contract. The only difference
between the provisions contained in the contract and those
found in the bond is what appellant added by inserting the
clause which we have set out in parenthesis. It is clear there-
fore that that clause was purposely and not inadvertently or
mistakenly added to the bond; and it is equally clear that it
was done for the purpose of defining and limiting the scope
of the obligations assumed by appellant. Taking the bond
as it is written, and under the pleadings and evidence, we
must arrive at the intention of the parties from the bond as
written, can the respondent sustain this action? Counsel con-
tend that in view that the appellant is engaged in the busi-
ness of furnishing such bonds for profit, and for the reason
that it determines upon the language and phraseology that is
used therein, therefore such bonds are to be liberally construed
in favor of the beneficiary. A number of cases are cited in
support of the contention. While some courts use the ex-
pression that bonds given under such circumstances are to

be liberally construed in favor of the beneficiary, yet that is not precisely what the courts mean. The rules or canons of interpretation which are resorted to by the courts to aid them in arriving at the meaning or intention of any written document, instrument, contract, or statute, are precisely the same in every case. Where, however, the intention or meaning is once ascertained, then the application of the contract to the subject-matter is in certain cases and under certain circumstances perhaps more liberal than under others. It has many times been decided that sureties are favorites of the law, and that "the contract of a surety is *strictissimi juris,* and it is not to be extended beyond the express terms in which it is expressed." *Daly* v. *Old,* 35 Utah 83, 99 Pac. 460, 28 L. R. A. (N. S.) 463. This is all that the courts mean when they use the somewhat loose expressions, which they sometimes do, that the contract of a surety is to be "strictly construed." Moreover, what is meant by the expression that the surety or in-indemnitor who executes such bond for profit does not come within the rule of strict construction is that, as against such surety or indemnitor, when the meaning or intention of the parties to such an instrument is once ascertained the bond will be applied neither strictly nor liberally, but with the view of effectuating the object or purpose for which it was given. Although a surety under such a bond is entitled to have the meaning and intention of the parties determined by the same rules that the meaning and intention of parties to other instruments are determined, yet in case of an ambiguity in the language used, or if a doubt arises by reason of the use of a particular term or phrase, the doubt may be, and usually is, resolved against the surety for profit, whereas it may be, and usually is, otherwise as against a voluntary surety. In either case, however, the surety may define and limit the scope of his obligation, and if he has done so in apt terms the court cannot legally enlarge upon them. To hold otherwise, as was said by Mr. Justice Straup in a case similar to this, "is merely another way of saying that courts may not only enforce but also create liabilities." *Smith* v. *Bowman,* 32 Utah 43, 88 Pac. 687, 9 L. R. A. (N. S.) 889. To ascertain the meaning of any

bond, we must have recourse to the whole instrument and give proper effect, if possible, to every word, phrase, or sentence contained therein. Now, if we apply the foregoing rules and principles to the bond in question, what is the scope or extent of appellant's obligation with regard to the right to maintain an action thereon by others than the company?

Respondent, among other cases, cites and relies on former decisions of this court. Those he particularly relies on from this court are *Montgomery* v. *Rief*, 15 Utah 495, 50 Pac. 623; *Brown* v. *Markland*, 16 Utah 360, 52 Pac. 597, 67 Am. St. Rep. 629, and *Smith* v. *Bowman*, 32 Utah, 33-39, 88 Pac. 687, 9 L. R. A. (N. S.) 889. In *Montgomery* v. *Rief*, the rule is stated thus:

"Where a promise or contract has been made between two parties for the benefit of a third, an action will lie thereon at the instance and in the name of the party to be benefited, although the * * * contract was made without his knowledge, and without any consideration moving from him."

It, in that case, is, however, also said:

"To entitle a third party, who may be benefited by the performance of a contract, to sue, there must have been an intention on the part of the contracting parties to secure some direct benefit to him. * * * 'To entitle him to an action,' said Mr. Justice Rapello in *Garnsey* v. *Rogers*, 47 N. Y. 233 (7 Am. Rep. 440), 'the contract must have been made for his benefit. He must be the party intended to be benefited.' In *Sayward* v. *Dexter-Horton & Co., supra*, (72 Fed. 758, 19 C. C. A. 176), it was said: 'But it is not every contract for the benefit of a third person that is enforceable by the beneficiary. * * * The fact * * * that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of the parties to secure to him personally the benefit of its provisions.'"

The other two Utah cases merely approve and reaffirm the foregoing doctrine. By what is said in the foregoing quotations it is not meant that the beneficiary must be named in the contract, but what is meant is that it must appear from the terms of the contract, or, as in this case, from the bond, that its provisions were intended directly for the benefit of the person who is bringing the action, or that he belongs to a

class which was intended to be directly benefited. The fore-going rule or principle is illustrated by the courts in a number of cases which respondent cites, and his counsel contend that the bond in question is within the rule laid down in the following, among other cases:

*Brown* v. *Markland,* 22 Ind. App. 652, 53 N. E. 295; *United States Gypsum Co.* v. *Gleason,* 135 Wis. 539, 116 N. W. 238, 17 L. R. A. (N. S.) 906; *Gwinn* v. *Wright,* 42 Ind. App. 597, 86 N. E. 453; *American Surety Co., etc.,* v. *Thorn, etc., Co.,* 9 Kan. App. 8, 57 Pac. 237; *Fitzgerald* v. *McClay,* 47 Neb. 816, 66 N. W. 828; *Gastonia* v. *Engineering Co.,* 131 N. C. 363, 42 S. E. 858; *R. Conner Co.* v. *Aetna Indemnity Co.,* 136 Wis. 13, 115 N. W. 811; *Pickle Marble, etc., Co.* v. *McClay,* 54 Neb. 661, 74 N. W. 1062; *Devers* v. *Howard,* 144 Mo. 671, 46 S. W. 625.

In *Brown* v. *Markland,* 22 Ind. App. 652, 53 N. E. 295, the Appellate Court of Indiana held that, a contract and bond containing the provisions that the contractor should furnish all labor and materials and should not suffer any "labor claims in any manner from any source whatever for work or materials furnished in said work" to remain unpaid were sufficient to entitle a materialman to sustain an action on the bond for materials furnished to the contractor which were used in the building named in the contract.

In *United States Gypsum Co.* v. *Gleason, supra,* the contract provided that the contractor must pay for all the labor and materials and give a bond to insure its performance. The bond provided that the contractor "shall pay all legal claims for labor performed and materials furnished," and the court held that a suit could be maintained by a materialman on the bond.

In *Gwinn* v. *Wright, surpa,* the bond contained the following provision:

"This bond is made for the use and benefit of all persons who may become entitled to liens under the said contract, * * * and may be sued upon by them as if executed to them in proper person."

Of course, the court sustained an action by one who furnished materials to the contractor for use in the structure described in the contract.

In *American Surety Co.* v. *Thorn, supra,* the bond was to the effect that the contractor "shall well and truly pay for all labor employed and materials furnished and used in said system (waterworks) as set forth in said contract," and it was held that a matcrialman could sue on the bond to recover for materials furnished for said waterworks.

In *Fitzgerald* v. *McClay, supra,* the Supreme Court of Nebraska held that a materialman could sustain an action upon a bond which was given to insure compliance with the provisions of the contract in which the contractor promised to "pay off in full all laborers and materialmen for labor performed and materials furnished so that each and every person connected with this contract may receive his just dues."

In *Gastonia* v. *Engineering Co., supra,* it was held that a materialman could maintain an action on a bond which was given to insure the performance of a contract in which it was provided that the contractor shall pay "all material used and wages of all laborers employed by said contractor."

In *R. Connors Co.* v. *Ætna Indemnity Co.,* it was provided that the contractor "shall pay for all labor and material that enter into the construction of the building," and it was held that such a bond was intended for the benefit of materialmen and laborers and that one coming within either class could maintain an action on the bond.

In *Pickle Marble, etc., Co.* v. *McClay, supra,* it was held that, where a bond provided that the contractor shall "satisfy all lawful claims of laborers and materialmen," one who furnished material to the contractor for use in the structure which was the subject of the contract could sue on the bond.

The other cases cited by respondent are to the same effect, and hence it is not necessary to prolong this review.

It will be observed that in each and every one of the cases reviewed there are apt and clear expressions from which it is apparent that the parties to the contracts and bonds intended them for the benefit of those who should either perform labor on or furnish materials for the building or structure which the contractor agreed to erect or construct. While the bonds, with perhaps one exception, do not in terms provide that those who perform labor or furnish materials may

sustain an action thereon, yet the right to do that is clearly implied in all of them. In that respect the contracts and bonds in question in those cases materially differ from the bond in the case at bar. There is, however, still another and a more important difference between the bond here in question and those passed on in the cases we have reviewed. In those cases there was nothing made to appear from which it could be said that the parties to the contracts and bonds there in question intended to limit or restrict the general terms or expressions used in either. It could there be assumed that every expression, however, general, should be given full scope and effect. If therefore the contracts provided for the payment of labor and material in general terms, as is the fact in nearly all, if not all, of the cases referred to, then it could well be assumed that the parties to those contracts and bonds must have intended them to be construed so as to cover all of the provisions contained in the contracts although not incorporated into the bonds. In the case at bar, however, the only provision that was contained in the contract that the contractor shall pay "materialmen, laborers and other employees" is scrupulously excluded from the bond. That the exclusion was intentional and for a purpose cannot be doubted. Again, every general expression from which it might be inferred that the bond was intended for the benefit of particular persons or a particular class such as laborers or materialmen, is carefully guarded and limited in the bond. In that respect it is made as clear as language could well make it that the bond was intended to be limited, and was limited, by its own terms, to "indemnify and save harmless the said Snake Creek Mining & Tunnel Company as expressly stipulated and limited in said clauses herein (in the bond) recited." Further, it is expressly provided that the bond shall not "cover or refer to any matter or thing relating to said contract and specifications except such clauses thereof as are recited in this bond (and) made a part thereof." The limitations must be construed in connection with all other expressions that are contained in the bond.

While there may be general expressions, which, if construed or considered alone, might be given a wider scope or effect, yet

when considered in connection with the express restrictions and limitations there is nothing contained in the bond which would not be proper to insert therein if given merely to indemnify against loss or damage which might be sustained by a particular corporation. This being so, we have no right to extend the scope and effect of the bond beyond what the parties thereto, from the language used by them, must have intended it should have. Nor are we permitted to have recourse to only a few general expressions in order to determine the intention of the parties. In order to arrive at the true intention of the parties, all that is said in the bond must be considered, and where the bond contains express restrictions and limitations, as is the case here, the courts have no right to look to other instruments for the purpose of extending the scope and effect of the bond. A court may give a wide scope to statements or expressions of a witness or witnesses, and in that way in a particular case may go beyond what was intended by the witnesses and yet not do any great harm nor be guilty of laying down any dangerous rules of construction. When we come to lay down rules of construction, however, and give scope and effect to the language used by the parties in written contracts or documents, all parties have the right to insist that we shall be careful in not extending the scope and effect of their language beyond what they intended it to have, and to that end they have a right to insist that the courts be bound by the usual and ordinary rules of construction. The question here is, not whether, under the circumstances, it would not be more just to permit respondent to recover on the bond; but the question is whether it was the intention of the parties to the bond that it should have the right to do so. Respondent was not obliged either to sell its material to the contractor, or in case it offered to do so, to sell them on credit. Moreover, it had the right to ascertain the precise conditions of the bond before it parted with its materials. It therefore is in no position to complain because the parties to the bond restricted and limited the conditions thereof so as not to authorize it to maintain an action thereon.

The bonds passed on in the cases cited by appellant, namely, *National Bank* v. *Gulf, C. & S. F. Ry. Co.*, 95 Tex. 176, 66 S.

W. 203, and *Cleveland M. & C. Co.* v. *Gaspard* (Ohio), 106 N. E. 9, L. R. A. 1915A, 768, were in our judgment, fully as broad, if not broader, in their scope than is the bond in the case at bar, and yet it was held that the materialmen could not sue on the bonds. While there are a few sporadic cases, perhaps, where the courts have permitted materialmen to recover on very general terms contained in the contracts and bonds, yet we have not found a single case where a recovery was permitted in a case where the right to sue was so limited and restricted as it is in this case. Where limitations and restrictions are placed in a bond in express terms, it requires no argument to prove that rights in conflict with or in derogation of such limitations and restrictions may not be inferred and enforced. To do so would be to violate every canon of interpretation. In fairness to counsel for respondent, it should be stated that they have very frankly stated in their brief that they base their right to recover upon the construction which the trial court gave the bond. Stating their position in their own language, they say:

"We have proceeded throughout upon the theory that this bond should be construed in the light of the provisions of Clause 10 as it should be and not as it is written in the bond."

To so construe the bond would, in our judgment, result in ignoring all the limitations and restrictions contained therein, at least so far as respondent is concerned. This would result in making a bond different from that made by the parties. We conclude therefore that the bond in question was not intended for the benefit of either laborers or materialmen, but that it was intended to exclude all from the right to sue thereon except the company for whose express benefit it was given. Had it been intended otherwise, it would have been easy to have inserted expressions in the bond evidencing that intention, and in that event the restrictions and limitations would have been omitted. Moreover, if the bond was intended for the benefit of materialmen and laborers as now contended for by respondent's counsel, the restrictions and limitations with one or two exceptions which are not material would have been entirely unnecessary and therefore useless. We must assume that they were intended for some purpose, and, if they were, then we have no right to ignore them.

In view of the conclusions reached, it is not necessary, and perhaps not proper, for us to determine the question of whether respondent has an enforceable claim against the company or not. The company is not a party to this action, and therefore anything we might decide in that regard would not be binding upon it. If, therefore, respondent has a claim against the company, it has it by virtue of our statute, and if the claim is a legal, valid and subsisting one, there is no reason why it should not enforce the same as against the company and thereafter permit the appellant and said company to adjust and settle their own controversies, and, if they cannot do so amicably, to appeal to the courts for assistance. Moreover, the question raised that respondent, if it ever had any claim against the company, has waived it, is a very important one which we would rather defer until all the parties in interest are before the court.

The judgment against the appellant is reversed, and the cause is remanded, with directions to the District Court to dismiss the complaint as against it. Costs to appellant.

McCARTY, J., concurs.

STRAUP, C. J.

I concur. In determining the meaning of a written contract, the primary factor is to ascertain the intention of the parties. That largely is to be ascertained from the language employed by them. As to sureties, their liability is not to be extended by implication beyond the terms of their contract. They have the right to stand strictly on the express terms of it and to insist that they be not held responsible for any liability or obligation not directly expressed within it. When on such consideration the intention of the parties as so expressed is once ascertained, then the contract with such ascertained intention is given effect and applied, not liberally or strictly, nor generously or niggardly, but truly completely, and conformably with such ascertained intent of the parties.