## LIBERTY COAL & LUMBER CO. v. SNOW.

### No. 3238.   Decided Jan. 22, 1919.   (178 Pac. 341.)

MECHANICS' LIENS—LIABILITY TO MATERIALMAN—FAILURE OF OWNER EXACT BOND FROM BUILDER.   Under Laws 1915, c. 91, a son, owner of land, who agreed with father that latter should cause to be erected thereon, in return for use of land for indefinite period, a building worth from $1,000 to $1,100, was under duty to obtain from builder, or to require his father to obtain, bond securing payment for material furnished, in default of which he himself was personally liable to materialmen.

Appeal from the District Court of Salt Lake County, Third District; *Hon. Geo. F. Goodwin*, Judge.

Action by the Liberty Coal & Lumber Company against Victor H. Snow.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*James D. Pardee* for appellant.

*George M. Sullivan* for respondent.

FRICK, J.

The plaintiff, a corporation, hereinafter called respondent, commenced this action against the defendant, Victor H. Snow, hereinafter designated appellant, to recover the sum of $608.65 for materials which respondent alleged said appellant was obligated to pay for by reason of having failed to comply with the provisions of chapter 91, Laws Utah 1915. The appellant filed an answer to respondent's complaint, in which he denied liability.   A trial to a jury resulted in a verdict in favor of respondent.   Judgment was duly entered upon the verdict, from which this appeal is prosecuted.

The action is based on the provisions of chapter 91 aforesaid.   The constitutionality of that chapter was upheld by this

court in the recent case of *Rio Grande Lumber Co.* v. *Darke,*
50 Utah, 114, 167 Pac. 241, L. R. A. 1918A, 1193. In view
that the defense interposed by appellant is that said chap-
ter has no application to this case, it becomes necessary to set
forth section 1 of that act in full, which reads as follows:

"That any person who makes a contract involving $500 or
more, with a builder, contractor, or other person to construct,
alter, repair, or make an addition to, either in whole or in
part, a building or other structure, or improvement upon land
in this state, shall obtain from such builder, contractor, or
other person, a good and sufficient bond with a surety, or
sureties, worth at least the amount of the penalty specified in
the bond over and above all their just debts and liabilities, ex-
clusive of property exempt from execution, which bond shall
be made payable in favor of the owner for the benefit of the
owner and of any party, or parties interested, in a sum equal
to the contract price, and shall be conditioned for the faith-
ful performance of the contract and for the prompt and faith-
ful payment of the accounts contracted for material furnished
and labor performed in constructing, altering, repairing or
making any addition to said building, structure or other im-
provement. 'Any person' as used herein refers to the owner
of the land, or of any interest therein, whether acting directly,
or with, or through any other person authorized by, or act-
ing with the knowledge and consent of such owner."

Section 2 merely gives the right to all interested persons to
inspect the bond provided for in section 1. Section 3 gives a
direct right of action to every "materialman, subcontractor,
or mechanic, or other person, or concern that may furnish ma-
terials, or perform labor for or upon any such building, struc-
ture," etc. Section 4 reads as follows:

"That any person subject to the provisions of section 1 here-
of who fails to obtain from the builder, contractor, or other
person engaged under said contract, such good and sufficient
undertaking, or who refuses to exhibit the same as required by
section 2 hereof, shall be personally liable for all accounts or
balances due from the said builder, contractor, or other per-
son, to materialmen, subcontractors and mechanics, and other

persons for materials supplied and labor performed for said building.''

Section 5, the final section, limits the liability of the owner to the reasonable value of the materials furnished, or labor performed, etc.

The undisputed facts, briefly stated, are:

That the appellant, during the whole of the year 1916, was the owner of a certain parcel of real property in Salt Lake County, which is particularly described; that in the year aforesaid the appellant entered into an agreement with his father, A. H. Snow, to the effect that said A. H. Snow should construct a dwelling upon said real estate, and that he should pay the cost and expenses of constructing the same. The agreement that was entered into between appellant and his father, stating it in the language of appellant's abstract, as testified to by the father, is as follows:

''Victor H. Snow is my son, is 24 years of age, is unmarried, and I am 55 years of age. The defendant makes his home with me, and we all live together. In the spring of 1916 my son was on the border part of the time. * * * I am only interested as being a member of my family. I would like to see him successful. I did not make any bond to my son, as owner of this land, conditioned that I would pay for all material and labor that went into the building, and I did not pay for material that went into this building furnished by the Liberty Coal & Lumber Company, except to the extent of $100. * * * The arrangements for building were these: My son had owned the 15-acre tract of land near Butlerville for something like possibly 2 or 3 years previous to the construction of the house, and the arrangement with my son was that I was to furnish the material for the house and pay for it and put it upon his land. The consideration for that was to be my use of the land until—it wasn't fixed, the number of years I was to use it, but until he got married or sold it, and I was to have the benefit of the use of the house and also the products yielded. The 15 acres consisted of 8 acres in orchard and two acres in strawberries, one acre in dewberries, etc., for the putting up of the house there I was to have the benefit of the use of the land and use of the house for my putting the ma-

terial in the house, which, of course, I expected to pay for. I had already paid $100 down. The contract was verbal. The contract was that I should put up a house such as I did, and the son should pay me for the work by permitting me to have the use of the land for a certain period of time. My son owned the land. There was no amount fixed for the value of the house. Mr. Conley's statement was about correct as to the cost of the house only there was some mason work and plastering work in addition to Mr. Conley's work, but his figures are about correct. The cost of the house was about $1,100. My son was in and out occasionally. As I stated previously to the jury, there was no definite time fixed as to how long I was to remain; but I was to use it until he sold it or got married and wanted the use of it himself. The understanding was we were putting up a house of the value of $1,000 or $1,100, and I was getting my pay for that for the use of the land for a period of time. My son did not require any bond on my part that I would pay for the material.''

It is conceded that respondent furnished materials to said A. H. Snow for said dwelling, that the same became a part thereof, and that there is a balance due respondent as stated in the complaint.

As before stated, practically the only defense is that chapter 91 aforesaid is not applicable to the facts in this case and that appellant is not liable although he did not comply with its provisions. A mere cursory reading of section 1 of said chapter shows that its terms are very broad and sweeping. In referring to the persons that are included within the act the language is ''that any person who makes a contract involving $500 or more with a builder, contractor, or other person to construct, alter, repair * * * any building,'' shall obtain from such builder, etc., a good and sufficient bond in a sum equal to the contract price, which bond shall, among other things, be conditioned ''for the prompt and faithful payment of the accounts contracted for material furnished and labor performed in constructing * * * said building,'' etc. The statute is very explicit respecting what is meant and who is included in the term ''any person.'' The last sentence of section 1 defines ''any person'' as being ''the owner of the

land, or of any interest therein, whether acting directly, or
with or through any other person authorized by, or acting
with the knowledge and consent of, such owner.'' Taking the
agreement just as it was stated to be by the father in his
testimony with the appellant, who is the owner of the real
estate and of the dwelling, we cannot see how by any fair
and reasonable construction appellant can escape ·from the
obligation that is imposed by the statute.   Indeed, whoever
framed the statute, it seems to us, must have had in mind
conditions similar to those which existed between the father
and son in this case.   If appellant can escape from the obliga-
tions imposed by the statute, then he has found a .ready
method whereby an owner of land may have it improved with-
out becoming liable under the statute.

As we understand appellant's counsel, his position, in effect,
is this: That by virtue of the agreement entered into be-
tween appellant and his father the latter acquired an interest
in appellant's land upon which the dwelling for which respon-
dent furnished materials was constructed.   In view of that, he
insists that it was the duty of the father, and not of appel-
lant, to obtain the bond which the statute requires.   Assuming,
without deciding, that as between appellant and his father the
latter did acquire an interest in the land, yet that in no way
affected the duty or obligation of appellant under the statute
to obtain the bond provided for.   In this connection it must
not be overlooked that the agreement between appellant and
his father required the latter to construct the dwelling upon
the former's land which was to exceed in value the sum of
$500.     That agreement, as we construe the statute, comes
clearly within its terms, and in failing to obtain a bond ap-
pellant became liable for the reasonable value of the materials
furnished for, and the labor performed on, the dwelling.   In
order to construe the statute so as not to cover a case like
the one at bar the language thereof must be unreasonably re-
stricted.   The statute does not concern itself with the legal
relationship of the parties; that is, it is quite immaterial
whether the agreement to construct a building upon land is
made between the owner thereof and the contractor, or be-
tween the owner and the builder, or between him and his

tenant, or between him and any other person; but if the owner of the land contracts for the construction of a building on his land, the statute makes it his duty to comply with its terms if he desires to escape personal liability. The purpose of the statute is to prevent the owners of land from having their lands improved with the materials and labor furnished and performed by third persons, and thus to enhance the value of such lands, without becoming personally responsible for the reasonable value of the materials and labor which enhances the value of those lands. The owner may, however, escape personal liability by obtaining the bond required by the statute. In this case the agreement between appellant and his father required the latter to construct a dwelling upon the land of the former. To do that materials and labor were necessarily required. It therefore became the duty of appellant to require his father to execute the bond provided for by the statute for the protection of those who might furnish materials for and perform labor on the dwelling which became part of the land in question and which enhanced its value. We are forced to the conclusion, therefore, that appellant is liable in this action for the value of the materials as found by the jury.

The question of what the duty of a tenant for years may be under the statute is not before us, and hence we express no opinion respecting that subject.

That the district court, in its rulings at the trial, may not have followed all of the foregoing reasons, and may have indulged in others, is wholly immaterial. In view of the conceded facts the only question here is whether the judgment is right as a matter of law. In our opinion no other result was permissible.

The judgment is affirmed; respondent to recover costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.