## DE LUXE GLASS CO. v. MARTIN et al.
### (BERNSTEIN et al., Interveners.)

No. 7281.   Decided August 2, 1949.   (208 P. 2d 1127.)

*Hurd & Hurd,* Salt Lake City, for plaintiff-respondent DeLuxe Glass Co.

*Joseph S. Nelson, Van Cott, Bagley, Cornwall & McCarthy,* Salt Lake City, for defendants-respondents Martin and another.

*Ray R. Christensen, Arthur E. Moreton,* Salt Lake City, for defendant-appellant General Casualty Co. of America.

*Samuel Bernstein, J. Arthur Bailey* (deceased), *Oscar W. Gray, Ray, Quinney & Nebeker, Romney & Boyer,* Salt Lake City, for interveners-respondents Bernstein and others.

McDONOUGH, Justice.

Plaintiff as material supplier sued defendant Martin as general contractor, defendant Capson-Bowman, Inc., as owner of the land, and defendant General Casualty Company of America, as surety in the contractor's performance bond, to recover the unpaid balance owing for certain materials purchased by defendant contractor in the construction of a store. The interveners were other materialmen who sought the same relief as plaintiff. From a judgment against the general contractor and against the surety, the latter only appeals.

The principal question raised by the appeal is the right of the materialmen to maintain the action against the surety.

On September 26, 1945, defendant George V. Martin, as general contractor entered into a written construction contract with defendant Capson-Bowman, Inc., by the terms of which contract the contractor agreed to construct a store building in Salt Lake City, in accordance with plans and specifications, for the sum of $30,000. Certain additions were subsequently made which increased the contract price to $32,406. The contract provided for payment of 90% of the contract price upon substantial completion of the entire work. Payment of the balance was due 15 days after substantial completion, provided the contract were then fully performed. Said contract also provided that

"Before issuance of final certificate the Contractor shall submit evidence satisfactory to the architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

Included in the "General Conditions," appeared the following:

"Unless otherwise stipulated, the Contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work."

The owner required the execution of a performance bond, which was executed by the general contractor as principal and by defendant casualty company as surety, in the penal sum of $30,000 in favor of Capson-Bowman, Inc. The construction contract specifically provided that the owner should have the right to require the contractor to furnish a bond covering

"the faithful performance of the contract and the payment of all obligations arising thereunder."

The principal portions of the bond furnished are as follows:

"The condition of this obligation is such, that whereas the Principal entered into a certain contract, hereto attached, with the Obligee, dated September 26, 1945, for construction of grocery store and drug store complete with fixtures, per plans and specifications. Located at 3000 South Highland Drive, Salt Lake City, Utah.

"Now, therefore, if the Principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Obligee, with or without notice to the Surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of such modifications to the Surety being hereby waived, then, this obligation to be void; otherwise to remain in full force and virtue."

No liens were filed by any of the subcontractors or materialmen; but it was stipulated that certain bills and charges were justly due and owing to them, including plaintiff and all of the interveners. There was no question as to the liability of the general contractor. The materialmen asserted that if the owner, Capson-Bowman, Inc., failed to secure a good and sufficient bond, then in that event the owner was liable to them under the statutes, secs. 17-2-1, and 2, U. C. A. 1943, and in the event the owner was protected by a good and sufficient bond, then the surety as well as the contractor was liable to them. The trial court

held that the bond sufficiently complied with the statute to exempt the owner from liability and held that the contractor and his surety were liable.

On this appeal the surety company contends that it was not liable to any of the materialmen because: (1) The "performance bond" does not by its terms cover the materialmen and subcontractors, and protects only the owner and not plaintiffs and interveners. (2) That it was released from any liability to the owner by reason of the fact that the owner made payments in excess of the amounts specified in the contract.

The second contention merits only brief mention. By the terms of the contract, the owner was obligated to make payments only up to 90% of the work completed, and only on presentation of lien waivers. It was stipulated that payments were made in excess of 90%, and that ■ lien waivers were not obtained. The owner held back somewhat less than 10% of the contract price, which it paid into court. Although the surety claimed that it was prejudiced as a matter of law, it offered no evidence of prejudice. Prejudice cannot be presumed. So far as appears from the record, the payments made to the contractor in excess of 90% of the contract price may have been applied on obligations owing to materialmen. The retention of such excess might well have resulted in increasing the materialmen's claims by an amount equal thereto. It was admitted that no liens were filed. The failure to obtain lien waivers could not, therefore, have resulted in any prejudice. The contention that the surety was released by reason of being prejudiced by the conduct of the owner, must be overruled.

The remaining question is whether the bond was given in substantial compliance with the requirements of the statutes, so as to relieve the owner from liability and enable the claimants against the contractor to recover against appellant as surety on that bond. Appellant, as

stated, contends that the bond by its terms was not designed to protect the materialmen and subcontractors who sued herein as plaintiff and as interveners. It also argues that the statute requires the bond to contain certain terms, which this bond does not contain. The statute in question is quoted below. The portions thereof emphasized in the argument of appellant, are italicized:

"17-2-1. Bond to Protect Mechanics and Materialmen.

"The owner of any interest in land entering into a contract, involving $500 or more, for the construction, addition to, or alteration or repair of, any building, structure or improvement upon land shall, before any such work is commenced, obtain from the contractor a bond in a sum equal to the contract price, with good and sufficient sureties, *conditioned* for the faithful performance of the contract and *prompt payment for material furnished and labor performed under the contract*. Such bond shall run to the owner and *to all other persons as their interest may appear;* and any person who has furnished materials or performed labor for or upon any such building, structure or improvement, payment for which has not been made, shall have a direct right of action against the sureties upon such bond for the reasonable value of the materials furnished or labor performed, not exceeding, however, in any case the prices agreed upon; which right of action shall accrue forty days after the completion, or abandonment, or default in the performance, of the work provided for in the contract.

"The bond herein provided for shall be exhibited to any person interested, upon request."

"17-2-2. Failure to Require Bond—Direct Liability.

"*Any person* subject to the provisions of this chapter *who shall fail to obtain such good and sufficient bond,* or to exhibit the same, as herein required, *shall be personally liable to all persons who have furnished materials or performed labor* under the contract for the reasonable value of such materials furnished or labor performed, not exceeding, however, in any case the prices agreed upon."

Appellant insists that the bond inures to the benefit of the owner exclusively, because the bond itself does not expressly state that it is given for the protection of materialmen and laborers or subcontractors. It is the position of appellant that unless the bond expressly states that it is for the benefit of the materialmen and laborers and subcon-

tractors, or, in any event "to all other persons as their interest may appear," such persons cannot sue on the bond. It is argued that since the parties cannot be prevented from making such contract as they see fit, the owner does not have to require the contractor to deposit a bond which will protect the subcontractors or materialmen unless the owner elects to do so; and that the owner has a choice of (a) demanding a bond in the form required by statute as a protection against all persons claiming under the general contractor; or (b) waiving the bond and assuming the risk of the entire financial burden for failure to require a bond; or (c) obtain only partial protection by requiring a faithful performance bond which requires the contractor to complete construction, but which does not guarantee that the contractor will pay the claims of laborers, materialmen and subcontractors. The surety contends that the last stated alternative was adopted by the owner in this case. The owner, however, denies that such is either the reasonable construction of the bond or the intent of the parties.

Inasmuch as the bond specifically refers to the contract of construction, the two must be construed together. See *Blyth-Fargo Co.* v. *Free et al.*, 46 Utah 233, 148 P. 427, and *M. H. Walker Realty Co.* v. *American Surety Co.*, 60 Utah 435, 211 P. 998. By the terms of the bond, the surety undertook that the principal should

"perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract."

As previously indicated, the contract provides under "General Conditions," that

"Unless otherwise stipulated, the Contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work."

There is no stipulation exempting the contractor from payment of any of the items specified. The contract also pro-

vides that before issuance of the final certificate of the architect, the

"Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

The payment of the contractor (principal on the bond) of all of those items is required by the "covenants, terms, conditions, and agreements of said contract."

Putting aside for the moment the question of whether plaintiff and interveners may sue on the bond, it is palpable that defendant contractor, the principal on the bond, failed to perform an undertaking or covenant of his agreement: he failed to pay the plaintiff and interveners ■ for the materials which he purchased from them and which went into the building. Defendant surety guaranteed that such payments would be made by its principal. It follows that should the owner be required to pay the debts in question, the surety would be liable under the bond to the owner in precisely the amount which it is, by judgment below, required to pay to the creditors.

Disregarding the quoted statute and viewing the bond as a common law obligation, the weight of authority is to the effect that under the bond here involved, the circuity suggested by what is said in the preceding paragraph is not here required; and that under such bond the plaintiff and interveners may sue the surety. In an annotation in 77 A. L. R. following the reported case of *Fidelity & Deposit Co. etc.* v. *Rainer, etc.*, 220 Ala. 262, 125 So. 55, 77 A. L. R. 13, the annotator states at page 62:

"According to the majority view that laborers and materialmen may recover on a building contractor's bond conditioned for their payment * * *, it is generally held that they are entitled to avail themselves of a bond conditioned merely for the faithful performance of the contract, and containing no express and direct provision for their payment, where the contract expressly requires the contractor to pay such persons or to satisfy all claims for labor and materials." (Citing cases.)

The question is further annotated in 118 A. L. R. at page 57, following the reported case of *Bristol Steel & Iron Works* v. *Plank,* 163 Va. 819, 178 S. E. 58, 118 A. L. R. 50, and the comment of the annotator at page 66 is to the same effect as that quoted above from 77 A. L. R. While there are a number of jurisdictions which follow the minority rule as shown by the cases cited and discussed in the annotations referred to, the majority rule as therein stated, is, in our opinion supported by the better reasoned cases and accords with the modern trend of judicial opinion. See 9 Am. Jur., Building & Construction Contracts, sec. 97, p. 62.

Nor are the cases in this jurisdiction to the contrary. While certain broad language in the earlier cases in this court might lend some support to the minority rule, see *Montgomery* v. *Rief,* 15 Utah 495, 50 P. 623, and *Smith* v. *Bowman,* 32 Utah 33, 88 P. 687, 9 L. R. A., N. S., 889, the cases are clearly distinguishable on the facts, and the language emphasized by appellant herein was not necessary to the results reached. Furthermore, the language of Mr. Justice Thurman in *M. H. Walker Realty Co.* v. *American Surety Co.,* 60 Utah 435, 211 P. 998, 1000, in referring to these cases, is here applicable:

"It is not necessary to review the former decisions of the court referred to by counsel. If they are not in harmony with the last expression of the court [*Blyth-Fargo Co.* v. *Free et al.,* 46 Utah 233, 148 P. 427] they are by implication overruled."

In the *Blyth-Fargo Co.* case, cited by appellant, the materialman was denied recovery because the bond was construed as an undertaking to assure performance of certain provisions of the contract which did not include that covering payment of materialmen. The whole tenor of the opinion in that case leads to the conclusion that had not the limiting clauses been incorporated in the bond a contrary result would have been reached. The opinion appears to have been so construed in *M. H. Walker Realty Co.* v. *American Surety Co.,* supra, which case supports the result here reached in-

sofar as permitting recovery against the surety by a beneficiary not named as an obligee in the bond.

Appellant in its brief stresses language of the opinions in the cases relied upon to the effect that it must appear from the terms of the bond that its provisions

"were intended directly for the benefit of the person who is bringing the action" [46 Utah 233, 148 P. 431]

or for the benefit of a class to which he belongs. *Blyth-Fargo Co.* v. *Free,* supra. An appropriate response to the argument based on such excerpts from the opinions is the annotator's note in 81 A. L. R. commencing at page 1271, entitled

"Right of Third Person to Enforce Contract Between Others for his Benefit."

The quoted elucidating comment is found at page 1287 and 1288. It reads:

"It is not always quite clear what is meant when the courts say that the 'intention' of the parties is controlling. There does not seem to be any basis for holding that, although a performance of the contract will necessarily and directly benefit the third person, his remedy depends upon an intention on the part of the parties to the contract that he shall have the right to sue thereon. While the intention of the parties controls in the creation of rights under the contract, and in determining the things required by the contract to be done by the parties, it would seem that, once the right is created or the duty is imposed in favor of the third person, the law furnishes the remedy, regardless of the intention of the parties in respect thereof.

"* * * So long as the contract necessarily and directly benefits the third person, it is immaterial that this protection was afforded him, not as an end in itself, but for the sole purpose of securing to the promisee some consequent benefit or immunity. In short, the motive, purpose, or desire of the parties is a quite different thing from their intention. The former is immaterial; the intention, as disclosed by the terms of the contract, governs. It is to be borne in mind that the parties are presumed to intend the consequences of a performance of the contract. That which is contemplated by the terms of the contract is 'intended' by the parties. 'The distinction between the motive which leads a person to enter into a contract, and the

intention deducible from the terms of the contract as it is written, is a very clear one.' * * *" (Citing cases.)

Clearly, the bond in this case was "intended" to directly benefit the materialmen, as that expression is above defined. They, therefore, are entitled to maintain this action.

We have hereinabove discussed the sufficiency of the bond as a common law obligation to sustain the right of the materialmen to sue. It is also sufficient under the statute to exonerate the owner of liability. Title 17 of our statutes was enacted for the protection of laborers and materialmen. *Liberty Coal & Lumber Co.* v. *Snow,* 53 Utah 298, 178 P. 341, and *Bamberger Co.* v. *Certified Productions, Inc.,* 88 Utah 194, 48 P. 2d 489. By its provisions, they, on default of the contractor, are given recourse, in the alternative, against the owner or the sureties on the contractor's bond. True, the bond did not expressly run "to the owner and all other persons as their interest may appear." But, as we have shown, its compass was such when construed with the contract, to effectuate the same result and to confer the same right. Hence it substantially complied with the statute, as the lower court held.

It follows that the judgment below should be affirmed. Such is the order. Costs to respondents.

PRATT, C. J., and WADE, WOLFE and LATIMER, JJ., concur.