280 P.2d 448

BOISE–PAYETTE LUMBER COMPANY, a corporation, Plaintiff and Appellant,

v.

PHOENIX INDEMNITY COMPANY, a corporation, Byron J. Darley and Bonnie H. Darley, Defendants and Respondents.

No. 8115.

Supreme Court of Utah.
Feb. 25, 1955.

Irving H. Biele, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, W. O. Darley, Salt Lake City, for respondent.

WORTHEN, Justice.

This is an interlocutory appeal from a summary judgment entered upon motion of the individual defendants.

In August, 1951, defendant Byron J. Darley entered into an agreement with one Stanley H. Pickles for the construction of a residence on property owned by Darley. The agreement provided:

"2. The Contractor agrees to provide all of the materials and perform all of the work herein specified, and in the attached plans and specifications (if any).

"8. Contractor agrees * * * to save the owner harmless from any lien or claims arising out of the work herein agreed to be performed."

The undertaking of defendant surety was as follows:

"Now, therefore, the condition of this obligation is such, That, if the Principal shall indemnify the Owner against any and all loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void; otherwise to remain in full force and effect."

Plaintiff furnished building materials to the contractor Pickles for use in the construction of the Darley residence. Pickles refused to pay for the building material and this suit was brought against the owners and Pickles' bondsman, the corporate defendant.

The trial court granted the motion of defendants Darley for summary judgment on the ground that a good and sufficient bond had been written by defendant Phoenix Indemnity Company to protect materialmen and laborers on claims against the contractor as required by law and that such undertaking having been furnished, plaintiff had no cause of action against the Darleys.

The matter before us is the sufficiency of the bond under our statutes to relieve the Darleys from the claim of plaintiff for materials furnished by plaintiff and used in the construction of Darley's home. We are called on to construe and apply sections 14–2–1 and 14–2–2. Those sections provide:

"14–2–1. *Bond to protect mechanics and materialmen.*—The owner of any interest in land entering into a contract, involving $500 or more, for the construction, addition to, or alteration or repair of, any building, structure or improvement upon land shall, before any such work is commenced, obtain from the contractor a bond in a sum equal to the contract price, with good and sufficient sureties, *conditioned for the faithful performance of the contract and prompt payment for material furnished and labor performed under the contract.* Such bond shall run to the owner and to all other persons as their interest may appear; *and any person who has furnished materials or performed labor* for or upon any such building, structure or improvement, payment for which has not been made, *shall have a direct right of action against the sureties* upon such bond for the reasonable value of the materials furnished or labor *performed,* not exceeding, however, in any case the prices agreed upon; which right of action shall accrue forty days after the completion, or abandonment, or default in the performance, of the work provided for in the contract.

"The bond herein provided for shall be exhibited to any person interested, upon request." (Italics added.)

"14–2–2. *Failure to require bond—Direct liability.*—Any person subject to the provisions of this chapter, who shall fail to obtain such good and sufficient bond, or to exhibit the same, as herein required, shall be personally liable to all persons who have furnished materials or performed labor under the contract for the reasonable value of such materials furnished or labor performed, not exceeding, however, in any case the prices agreed upon."

Appellant contends that the bond of the defendant Phoenix Indemnity Company does not substantially comply with the requirements of section 14–2–1, U.C.A.1953, referred to herein; and that the Darleys have not by the bond furnished, relieved themselves from liability to appellant.

We are of the opinion that the bond furnished by the defendant indemnity company did not comply with section 14–2–1, supra, and that the·individual defendants were not relieved from the obligation to materialmen furnishing material used in the construction of the residence in question.

The latest expression of this Court on the rights of materialmen to proceed directly against the surety of a building contractor is DeLuxe Glass Co. v. Martin, 116 Utah 144, 208 P.2d 1127, 1129.

In that case the contract between the owner and the contractor provided: " 'Unless otherwise stipulated, the Contractor shall provide *and pay for all materials,* labor, water, tools, equipment, light, power, transportation and other facilities neces-

sary for the execution and completion of the work.'" The contract further provided: "'Before issuance of final certificate the Contractor shall submit evidence satisfactory to the architect that all payrolls, *material bills,* and other indebtedness connected with the work have been paid.'" [Italics ours.]

By the terms of the bond in the DeLuxe Glass Co. case, supra, the surety undertook, and agreed that its principal should," "'perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract.'"

As heretofore observed, the contractor in that case agreed *to pay for all materials,* and perform all of the work and agreed to *save the owner* harmless from any lien or claim arising out of the work.

The Court in the DeLuxe Glass Co. case, supra, observed at page 151 of 116 Utah, at page 1131 of 208 P.2d: *"The payment* of [sic] the contractor (principal on the bond) of all of those items is required by the 'covenants, terms, conditions, and agreements of said contract.'"

In the instant case the contract contains no provision for the contractor to pay for all materials.

In the DeLuxe Glass Co. case, supra, this Court used this language at page 151 of 116 Utah, at page 1131 of 208 P.2d:

"Defendant surety guaranteed that such payments would be made by its principal."

No such provision is found in the bond in the instant case. It is not conditioned that the *principal shall perform and fulfill all the covenants, terms, conditions and agreements of the contract.* The surety agreed only to indemnify the owner against any loss or damage arising by reason of the failure of the Principal to faithfully perform the contract. It did not agree that the Principal would perform his contract.

Specifically the bond failed to comply with the provisions of section 14–2–1.

The bond is not *"conditioned for the faithful performance of the contract and prompt payment for material furnished and labor performed under the contract.* * *"* Rather it undertakes only to indemnify the owner if the contractor fails to pay for material and labor. It is not a promise that the contractor will pay for the same.

Let it be assumed that this bond is such that plaintiff has a right against the surety as a common law obligation, and that if and when a judgment is obtained against the Darleys they could ask that the surety be required to satisfy the judgment without the circuity of a separate action, nevertheless we believe and hold that the bond in this case is not sufficient under our statute to exonerate the owner of liability and permit the suit against the surety directly and alone.

In the instant case the Darleys could have protected themselves by demanding the bond provided for in Section 14–2–1,

and providing in their contract for such a bond. No provision is made in the contract for any bond whatsoever.

It may well be that Pickles should have secured the bond contemplated by the aforementioned section, but we must here determine the right of plaintiff under the bond furnished and not the right of plaintiff had the bond contemplated by the statute been given. This Court, in the case of Blyth-Fargo Co. v. Free, 46 Utah 233, at page 239, 148 P. 427, at page 429 cited:

"Appellant, like all other competent to contract, had the right to enter into just such a contract as it saw fit and to limit its obligations in any particular it deemed proper, and, if the company or contractor were dissatisfied with the limitations contained in the bond as executed, either, or both, could refuse to accept it."

The only question before the Court is this: Is the bond in question such as is contemplated by section 14–2–1? If it is then the judgment of the lower court must be affirmed. If it does not comply with the requirements of that section then the judgment should be reversed. Nor does our decision depend on whether or not the plaintiff may eventually recover from the surety.

The language of our statute is explicit. The bond mentioned as one relieving the owner from liability to materialmen is one conditioned for the faithful performance of the contract *and prompt payment for material furnished and labor performed under the contract. Said bond must also run to the owner and to all other persons as their interest may appear.* No language is used in the bond which can fairly be construed as an agreement on the part of the bonding company guaranteeing to the owner that the contractor will pay material bills and satisfy all labor bills.

Let it be assumed that by the language of the contract heretofore mentioned the contractor agreed to provide all of the materials and perform all of the work *at his own expense.* Let it be further assumed that the contractor, by the language used, agreed to pay all materialmen for materials furnished. Still the bonding company did not agree nor guarantee that the materials should be paid for. Its only undertaking was to indemnify the owner against loss or damage because the contractor failed to pay for the materials. It did not agree by its undertaking that he should pay for them.

No language is used in the bond which can fairly or reasonably be understood as making the bond a performance bond, or as guaranteeing that the contractor will pay for all materials. It runs to the owner alone and by its very nature as an indemnity bond it can indemnify only the owner and no obligation arises against the bonding company until the owner sustained loss or damage.

The general distinction between "covenant of indemnity" and a "covenant to pay"

is discussed in 20 Words and Phrases, Indemnity, p. 680, as follows:

"There is an essential difference, in legal effect, between 'covenants of indemnity' strictly—that is, of indemnity against loss—and 'covenants to pay' or assume or stand for the debt, or a surety's liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then comes absolute, and the failure to pay is a breach of the express terms of the covenant; while those of the former class are not broken, and no right of action accrues, until the indemnitee has suffered a loss against which the covenant runs. This distinction grows out of the express terms of the contract, and is well established by authority. It is expressed by Mr. Justice Swayne in Wicker v. Hoppock, 6 Wall. 94, 99, 73 U.S. 94, 99, 18 L.Ed. 752, 753, as follows: 'In that class of cases [contract of indemnity] the obligee cannot recover until he is actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well-settled distinction between an agreement to indemnify and an agreement to pay. In the latter case a recovery may be had as soon as there is a breach of the contract, and the measure of damages is the full amount agreed to be paid.'

Henderson-Achert Lithographic Co. v. John Shillito Co., 64 Ohio St. 236, 60 N.E. 295, 298, 83 Am.St.Rep. 745."

We conclude, therefore, that the bond of the defendant Indemnity Company does not comply with the requirements of Section 14–2–1 and that the Summary Judgment entered by the trial court is reversed. Costs to appellant.

McDONOUGH, C. J., concurs.

HENRIOD J., concurs in the result.

WADE, Justice (dissenting).

I am not prepared to agree that this bond does not meet the requirements of sections 14–2–1 and 14–2–2, Utah Code Annotated so as to relieve the owner from liability. I see no substantial distinction between this case and the DeLuxe Glass Co. v. Martin, 116 Utah 144, 208 P.2d 1127, in which we held that the bond met the requirements of those sections of the statute. In that case the bond did not expressly authorize the persons who furnished labor or material to bring suit on the bond. It did require the payment by the contractor of all of the costs of construction of the building in question, which payments the bonding company guaranteed. But I think that by implication that was clearly the intention of the parties to the bond in the instant case. The prevailing opinion seems to agree that in this case the bond by implication required that the contractor pay all the costs

of construction. I see no substantial difference between the other provisions of that contract as stated in the prevailing opinion, that the contractor "shall perform and fulfill all the covenants, terms, conditions and agreements of the contract" and the provisions of the contract in this case that the surety agrees to indemnify the owner against any loss or damage arising by reason of the failure of the principal to faithfully perform the contract. In both cases the Bonding Company agreed to pay such costs to the owner only, not to the persons who furnished such materials or labor, if the contractor failed to make such payment. In neither case was there any express provision in the Bond as required by the statute that it "shall run to the owner and to all other persons as their interests may appear." In that case as well as here the court had to imply or read into the Bond such a provision. The only difference in the two bonds is that in the former case the bond expressly provided liability to the owner in the event of the failure of the contractor to pay the cost of constructing the building, whereas in this case such is clearly implied in the Bond. This seems to me to be a difference without any reasonable distinction.

I therefore dissent.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of WADE, J.