2000 Utah Ct. App. 74

**Justin F. PAVONI and Kimberly A. Pavoni, individuals, Plaintiffs and Appellants,**

v.

**C. Michael NIELSEN, an individual; and Does 1 through 10, inclusive, Defendants and Appellees.**

**No. 990179–CA.**

Court of Appeals of Utah.

March 16, 2000.

Alan L. Sullivan and David N. Wolf, Snell & Wilmer, Salt Lake City, and Richard A. Schneider, King & Spalding, Atlanta, Georgia, for Appellants.

Thomas R. Karrenberg, Jon V. Harper, and Victoria Coombs Bushnell, Anderson & Karrenberg, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., BILLINGS, J., and GARFF, S.J.[1]

## OPINION

BILLINGS, Judge:

¶ 1 Justin and Kimberly Pavoni appeal the trial court's grant of a directed verdict in favor of defendant Michael Nielsen, and the resulting attorney fee award to Nielsen as the prevailing party under an indemnity agreement. We reverse and remand.

## BACKGROUND

¶ 2 On review of a directed verdict, "we 'examine the evidence in the light most favorable to the losing party.'" *Fibro Trust, Inc. v. Brahman Fin., Inc.,* 1999 UT 13, ¶ 13, 974 P.2d 288 (quoting *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 57 (Utah 1991)). We recite the facts accordingly.

¶ 3 In the spring of 1992, the Pavonis negotiated with Nielsen to purchase a twenty acre lot in the Red Hawk development near Park City (the property). During negotiations, the Pavonis told Nielsen of their desire to build a house on a specific site on the property, between a developed access road and a jeep trail running across the property. Nielsen assured the Pavonis that their building site would work, and the parties agreed on a purchase price of $115,000.

¶ 4 The parties entered into an earnest money agreement reflecting the negotiated terms and purchase price. The earnest mon-

---

1. Senior Judge Regnal W. Garff sitting by special appointment pursuant to Utah Code Ann. § 78–2–4(2) (1996); Utah Code Jud. Admin. R3–108(4).

ey agreement incorporated by reference an addendum providing that the seller must approve the building site and that "Seller agrees to install additional 3-inch. gravel from the driveway entrance on [the property] to 20 feet beyond ... the home site within 120 days from the date of closing. Seller will widen and straighten the driveway entrance as discussed with [buyer] on May 30th, 1992."

¶ 5 The earnest money agreement also contained an abrogation clause: "Except for express warranties made in this Agreement, execution and delivery of final closing documents shall abrogate this Agreement." .

¶ 6 Before closing the purchase in July of 1992, Nielsen informed the Pavonis of a lis pendens and an easement litigation affecting the property. Adjoining landowners, the Calls, had filed a lis pendens claiming a prescriptive right-of-way over several Red Hawk lots, including the Pavonis' intended property. Nielsen assured the Pavonis there was no cause for concern about the litigation.

¶ 7 Nielsen agreed to indemnify the Pavonis for any damages or losses sustained as a result of the Call litigation. Nielsen and the Pavonis signed an indemnity agreement which provided: "Seller [Nielsen] does hereby agree to indemnify, defend, save and hold harmless, Buyer [Pavonis] from and against any and all claims, demands, damages, losses, liens, liabilities, penalties, fines, costs and expenses, (including attorney's fees), if any, arising directly or indirectly from or out of [the Call lawsuit]." The indemnity agreement contained a separate attorney fees clause for fees incurred in enforcing the agreement: "If any legal action arises under this Agreement or by reason of any asserted breach of it, [t]he prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees, incurred in enforcing or attempting to enforce ... this Agreement, including costs incurred prior to commencement of legal action."

¶ 8 After purchasing the property, the Pavonis retained an architect to design a home for the specific site on which they wished to build. In addition, they contracted for a survey of the property and home site. The Pavonis paid the architect $5,500 for preliminary plans, a survey, and design specifications.

¶ 9 After the Pavonis purchased the property, the parties to the Call litigation tried to negotiate a resolution to the dispute over the easement. The Pavonis, not named in the Call lawsuit but clearly affected by it, had independent counsel to represent their interests in the negotiations. Under the indemnity agreement, Nielsen paid $2000 to the Pavonis for attorney fees. Nielsen included a note with the check stating the amount was an estimate of fees and requesting the Pavonis to notify him if the amount was insufficient. Nielsen received no notice of additional amounts of specific attorney fees due. However, in April of 1994, prior to the resolution of the easement dispute, Nielsen received a demand letter for $150,000 in unspecified damages from an attorney retained by the Pavonis to pursue claims against Nielsen on the indemnity agreement.

¶ 10 In July of 1994, Nielsen settled the Call lawsuit on behalf of the Red Hawk owners named in the suit. The settlement permitted the Calls an easement along the jeep trail traversing the Pavonis' property and exiting onto the adjoining land.

¶ 11 The Pavonis were dissatisfied with the easement settlement. Informed through acquaintances that a prospective buyer was interested in the property, the Pavonis had the property appraised in July of 1994. The property was appraised at $285,000, with "no apparent adverse easements." In September of 1994, the Pavonis sold the property for $282,500, "split[ting] the difference" between the appraised price and the buyer's initial offer.

¶ 12 After selling the property, the Pavonis filed this suit alleging that Nielsen breached both the earnest money agreement and the indemnity agreement.[2] The Pavonis claimed

---

**2.** The Pavonis also included causes of action for fraud and intentional infliction of emotional distress. They filed an amended complaint in which the emotional distress claim was dropped and a claim for accounting of homeowner association funds was added. The accounting claim was dismissed for lack of standing. The fraud claim was presented to the jury, which returned

that Nielsen failed to install gravel or straighten the driveway entrance as warranted in the earnest money agreement. Additionally, they claimed that Nielsen failed to indemnify them for all costs, damages, or losses incurred as a result of the Call litigation.

¶ 13 At trial in September 1998, Nielsen moved for a directed verdict on all claims after the Pavonis presented their case. The trial court concluded that, as a matter of law, the earnest money agreement had been abrogated by the deed and closing documents, and granted a directed verdict on that claim. Additionally, the court concluded that the Pavonis had failed to show any damages under the indemnity agreement. Thus, the court granted a directed verdict on all claims brought under the indemnity agreement and granted Nielsen attorney fees as the prevailing party under the indemnity agreement. The Pavonis appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 14 The Pavonis assert the trial court erred in granting the directed verdicts because the Pavonis produced competent evidence of damages for which they were entitled to indemnity, and because the earnest money agreement contained collateral warranties surviving the deed. In reviewing a directed verdict, appellate courts use the same standard as the trial court, evaluating whether "the evidence at trial raised a question of material fact which precluded judgment as a matter of law." *Mahmood v. Ross,* 1999 UT 104, ¶ 16, 990 P.2d 933. A directed verdict is appropriate only when, after viewing the evidence in the light most favorable to the nonmoving party, "the court is able to conclude, as a matter of law, that reasonable minds would not differ on the facts to be determined from the evidence presented." *Id.* at ¶ 18 (citation omitted). Courts are not free to weigh the evidence, *see id.,* but may direct the verdict where "reasonable minds would agree that no substantial evidence supported each element of the cause of action." *Fibro Trust, Inc. v. Brahman Fin., Inc.,* 1999 UT 13, ¶ 13, 974 P.2d 288. Appellate courts will reverse a verdict in favor of Nielsen. These causes of

directed verdict when the evidence presented at trial is "sufficient to permit a reasonable jury to find for the nonmovant." *Gilbert v. Ince,* 1999 UT 65, ¶ 14, 981 P.2d 841.

## ANALYSIS

### I. The Indemnification Agreement

¶ 15 The Pavonis argue the trial court erred in granting a directed verdict on their claims brought under their indemnity agreement with Nielsen. The Pavonis argue that they presented competent evidence showing they suffered damages covered under the agreement, including loss of value to the property, attorney fees, and architect fees, and that the trial court ignored that evidence when it granted a directed verdict for Nielsen.

■ ¶ 16 Under a contract to indemnify for damages or loss, an action does not arise until the indemnitee has actually incurred a loss. *See Boise–Payette Lumber Co. v. Phoenix Indem. Co.,* 3 Utah 2d 150, 280 P.2d 448, 451 (1955); *see also Balboa Ins. Co. v. Zaleski,* 12 Conn.App. 529, 532 A.2d 973, 976 (1987). Thus, the Pavonis have the burden of producing evidence showing they actually incurred a loss that would entitle them to indemnification under the agreement.

### A. Loss of Value to Property

■ ¶ 17 The Pavonis claim they were damaged because the Call easement reduced the value of their lot. To withstand the directed verdict, the Pavonis must "produce a sufficient evidentiary basis to establish the fact of damages." *Sawyers v. FMA Leasing Co.,* 722 P.2d 773, 774 (Utah 1986). Damages cannot be awarded based solely on possibility or conjecture. *See Jamison v. Utah Home Fire Ins. Co.,* 559 P.2d 958, 961–62 (Utah 1977). Thus, the Pavonis were required to produce competent evidence that the property lost value due to the easement.

■ ¶ 18 The Pavonis point to Nielsen's testimony that land without easements is generally more valuable than land with easements and Nielsen's speculation that the val-

action are not on appeal.

ue of Pavoni's property may have been reduced by "a couple of thousand dollars." However, such testimony is insufficient to establish that the Pavonis actually suffered damages due to loss of value because of the easement.

■ ¶ 19 The evidence produced at trial showed that the property was appraised for $285,000 in the absence of any apparent adverse easements, and that Mr. Pavoni negotiated the sale price below the appraisal only because he split the difference between the buyer's offer and the appraised value. The Pavonis thus produced no competent evidence that the easement caused them actual damage by diminishing the property's value. Indeed, the appraised value of the property more than doubled in the two years between the Pavonis' purchase of the property without the easement and their subsequent sale of the property with the easement.

¶ 20 Because the Pavonis produced no competent evidence of an actual loss of land value, the trial court correctly directed a verdict on this element of damages.

### B. Attorney Fees

¶ 21 The Pavonis seemed to argue both at trial and again on appeal that, because the indemnity agreement indemnifies the Pavonis for attorney fees "arising directly or indirectly" from the Call litigation, the attorney fees that qualify as damages under the agreement include both those incurred in the Call litigation and also those incurred to enforce the indemnity agreement against Nielsen. We disagree.

■ ¶ 22 Even under express indemnity agreements, "an indemnitee may recover only those attorney fees reasonably incurred in defending the claim indemnified against; the indemnitee may not recover attorney fees incurred in establishing the right to indemnity" as damages under the indemnity agreement. *James Constructors, Inc. v. Salt Lake City Corp.*, 888 P.2d 665, 673 (Utah Ct.App. 1994) (citations omitted). This is a "virtually unanimous rule" of indemnity. *Id.*

¶ 23 The indemnity agreement indemnifies the Pavonis for attorney fees incurred to defend the Call litigation: "Seller [Nielsen]

does hereby agree to indemnify, defend, save and hold harmless, Buyer [the Pavonis] from and against any and all ... costs and expenses (including attorney fees), if any, arising directly from or out of, the [Call litigation]." Under *James Constructors*, the fees covered are limited to the Call litigation.

■ ¶ 24 Moreover, the indemnity agreement specifically refers to attorney fees arising from enforcement of the indemnity agreement in a separate paragraph:

> If any legal action arises under this Agreement or by reason of any asserted breach of it, [t]he prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees, incurred *in enforcing or attempting to enforce any of the terms, covenants, or conditions of this Agreement*, including costs incurred prior to commencement of legal action.

(Emphasis added.) Indemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions. *See Cellcom v. Systems Comm. Corp.*, 939 P.2d 185, 192 (Utah Ct.App. 1997); *Continental Heller Corp. v. Amtech Mech. Servs.* 53 Cal.App.4th 500, 61 Cal.Rptr.2d 668, 670 (1997).

¶ 25 Under the plain meaning of this attorney fees provision, it is the prevailing party in an action to enforce the indemnity agreement that is entitled to attorney fees. Thus, although the indemnity provision of the agreement entitles the Pavonis to attorney fees incurred in the Call litigation without condition, the attorney fees provision entitles the Pavonis to fees incurred in an enforcement action against Nielsen only if the Pavonis prevail on their indemnification claim. These latter attorney fees are not the damages indemnified against. *See generally James Constructors*, 888 P.2d at 673.

■ ¶ 26 We conclude the Pavonis failed to present competent evidence to show damages in the form of attorney fees under the indemnification agreement. The Pavonis were required to show that they paid attorney fees beyond the $2000 that Nielsen reimbursed and that such attorney fees were incurred, not in investigating or pursuing

claims against Nielsen, but in defending against the easement. The Pavonis have "the burden to produce a sufficient evidentiary basis to establish the fact of damages and to permit the trier of fact to determine with reasonable certainty the amount." *Sawyers,* 722 P.2d at 774.

¶ 27 The only evidence the Pavonis presented were checks showing merely that the Pavonis paid legal bills; they did not establish that the payments were due to defending the easement litigation. Although the Pavonis had control of the best evidence—the attorney bills or attorney testimony—the Pavonis presented no specific evidence to show that the work done was in defending against the easement. Mr. Pavoni testified that fees were incurred as a result of the easement. However, his testimony never distinguished between the Call litigation and the Nielsen litigation. Furthermore, the Pavonis made no timely claim to additional attorney fees in response to Nielsen's letter offering to cover any additional attorney fees. Thus, we agree with the trial court that the Pavonis introduced no competent evidence that they incurred additional attorney fees that were covered by the indemnity agreement. We therefore affirm the directed verdict on this issue of damages.

### C. Architect Fees

■ ¶ 28 The Pavonis argue they demonstrated damages under the indemnity agreement by establishing that they paid $5500 for architect and survey fees which they were unable to use for their intended home because of the easement. Viewing the evidence in the light most favorable to the Pavonis, we conclude that the Pavonis introduced sufficient competent evidence to create a question of fact for the jury on this issue. Thus, we conclude the directed verdict on this issue of damages was error.

¶ 29 The indemnity provision broadly indemnifies the Pavonis against any "damages, losses, ... costs and expenses ... arising directly or indirectly" from the Call litigation. We conclude that the broad language of the indemnity agreement would cover the architect and survey fees that the Pavonis incurred if the Pavonis establish: (1) that they

paid such fees; and (2) that the plans for which they paid lost value as a result of the easement.

¶ 30 The Pavonis produced evidence at trial that, after Nielsen assured them that they could build on their specifically chosen site, the Pavonis hired an architect to design a custom home for that particular site. After the Call easement was granted, the site was no longer viable. The testimony at trial is sufficient to create an issue for the jury because reasonable minds could conclude that, because the house plans were designed for a particular site, the plans lost their value when the site lost viability because of the easement.

¶ 31 Nielsen contends that the Pavonis incurred no damages because the plans were included in the sale of the lot and the Pavonis therefore recovered the $5500 as part of the price for which they sold the lot. A jury may well conclude such from the evidence, but there is contrary competent evidence in the record such that this issue should have gone to the jury. Mr. Pavoni testified that he paid $5500 in fees for plans that were useless to him because of the easement. He further testified that he gave the survey to the new lot owners but the sales price did not change because of the survey. Mr. Pavoni further testified that the architectural plans and specifications were never even delivered to the new lot owners and certainly were not included in · the purchase price of the lot.

¶ 32 Because there is competent evidence to support a finding in favor of the Pavonis, the directed verdict on the issue of whether the $5500 in survey and architectural fees were damages recoverable under the indemnity agreement was error. Accordingly, we reverse the directed verdict and remand for a jury to determine what damages, if any, the Pavonis suffered as a result of paying the architect and survey fees.

### II. Attorney Fees

¶ 33 The trial court awarded Nielsen attorney fees as the prevailing party under the indemnity agreement. Because we reverse the directed verdict on the architecture fees under the indemnity agreement, we must

also reverse the award of attorney fees, as Nielsen is not the prevailing party. The issue of attorney fees must be decided after the jury decides the architect fee damage issue under the indemnity agreement.

### III. The Earnest Money Agreement

¶ 34 The Pavonis argue the trial court erred in concluding that the earnest money agreement was abrogated and granting a directed verdict against them. We agree.

¶ 35 The Pavonis entered into the earnest money agreement with Nielsen memorializing their negotiated terms for the purchase of the property. Included in the negotiated terms was the requirement for Nielsen to place additional gravel on the property. The term was listed on an addendum attached to the agreement and incorporated into the seller's express warranties.

¶ 36 Nielsen argues that the abrogation clause extinguished any rights the Pavonis had under the earnest money agreement because all terms merged into the deed. However, by the plain language of the abrogation clause, the express warranties in the earnest money agreement survived the delivery of the deed. "Except for express warranties made in this Agreement, execution and delivery of final closing documents shall abrogate this Agreement." Under the earnest money agreement, delivery of the gravel was warrantied, and survived the deed. Thus, the trial court erred in concluding that the ear-

nest money agreement terms were abrogated and merged into the deed.[3] Whether this warranty was performed, and if not, what, if any, damages the Pavonis suffered, are questions for the jury.

### CONCLUSION

¶ 37 In sum, we conclude the trial court erred in directing a verdict on the indemnity agreement. The Pavonis presented sufficient evidence to survive a directed verdict regarding survey and architect fee damages. Also, the court erred in directing a verdict on the earnest money agreement. Because the promise to install gravel was included in the seller's warranties, and the warranties were excepted from the abrogation clause, the term was not merged into the deed. By the express language of the abrogation clause, the warranties survived the deed. Because we reverse and remand, the award of attorney fees to Nielsen as prevailing party under the indemnity agreement is vacated.

¶ 38 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and REGNAL W. GARFF, Senior Judge.

---

3. Nielsen argues that the merger doctrine and its exceptions are not applicable here because of an express abrogation clause. He asserts that even express warranties or future performance contemplated in an earnest money agreement would be extinguished if there were an abrogation clause. To an extent, he is correct. *See Schafir v. Harrigan*, 879 P.2d 1384, 1392 (Utah Ct.App. 1994) (concluding express warranty merged into deed when agreement included abrogation clause). However, the abrogation clause in

*Schafir* was broadly worded and did not except the warranties. Here, the abrogation clause was specifically limited, excepting all seller's warranties, including the promise to add gravel, from merging with the deed. Thus, the warranties survived by the express language of the agreement. *See id.* (concluding express warranty in earnest money agreement not breached "unless that warranty ... is contained in the warranty deed or, *by its terms, survives the delivery and acceptance of the warranty deed.*").