2004 UT App 43

**Paul Blaine MARTINEZ, Plaintiff and Appellee,**

v.

**Glen L. WELLS, Defendant and Appellant.**

No. 20010869–CA.

Court of Appeals of Utah.

Feb. 26, 2004.

Rehearing Denied April 30, 2004.

Bruce A. Maak, Parr Waddoups Brown Gee & Loveless, Salt Lake City, for Appellant.

Eric C. Olson, Kirton & McConkie, Salt Lake City, for Appellee.

Before BILLINGS, P.J., and JACKSON and THORNE, JJ.

## OPINION

THORNE, Judge:

### NATURE OF THE CASE

¶ 1 Glen L. Wells appeals a jury verdict granting Paul Blaine Martinez an easement across Wells's property. We affirm.

### BACKGROUND [1]

¶ 2 In 1944, the Conover family purchased several hundred acres of property located approximately twenty miles southeast of Price, Utah, and north of Sunnyside, Utah (the Conover Property). Prior to the purchase, Jay (aka Gay) Pagano owned land (Pagano Property) adjacent to that purchased by the Conovers.

¶ 3 The Conover Property and Pagano Property were roughly divided by a mountain ridge. A dirt road, the "Left Fork road," crossed this mountain ridge, connecting the two properties. Historically, the Left Fork road began in the southwest corner of the southeast corner of section 35 in Township 13 (property owned by Pagano) and proceeded northwesterly for over six miles through sections 35, 34, 27, 22, 23, 15 and

into section 14 (property owned by the Conovers).

¶ 4 In 1974, LaVon Day acquired an undivided one-fourth interest in the Conover Property, which he then conveyed to the Lazy Dazy Ranch (Lazy Dazy), a partnership in which LaVon and his brother, Donald Day, were the only partners. In 1978, LaVon Day and the Conovers' partitioned the property. The parties did not record the deeds for this 1978 transaction until 1982. The Conovers retained property not at issue in this case, and LaVon Day retained title to the property that is presently owned by Appellee, Paul Martinez (Property 1M), and Appellant, Glen Wells (Property 2W).

¶ 5 In 1983, the Lazy Dazy partnership was dissolved. The Day brothers divided the property held by the partnership, with LaVon taking possession of Property 1M and Donald taking possession of Property 2W. Even though Lazy Dazy held title to Property 1M and Property 2W, the brothers executed the deeds in their individual names and listed themselves as the grantors. LaVon quit-claimed his interest in Property 1M to Donald and Donald quit-claimed his interest in Property 2W to LaVon. However, Donald reserved to himself "a road right[-]of[-]way over and across portions of [Property 2W] on an existing dirt roadway so as to provide [Donald] with ingress and egress to" Property 1M.

¶ 6 In 1984, Donald and LaVon apparently noted the defects in the 1983 deeds and executed corrected deeds. These deeds also named Lazy Dazy Ranch as a grantor and noted that Donald and LaVon were each general partners of the Lazy Dazy partnership. As in 1983, the 1984 deed executed by Donald reserved a right-of-way across portions of Property 2W to access Property 1M.

¶ 7 In 1988, Donald conveyed Property 1M to Paul Martinez Sr. by warranty deed, who in 1989 transferred it to Paul Martinez Jr. and two others. In 1993, Martinez, the Appellee, became the sole owner of Property 1M.

1. We recite facts in the light most favorable to the jury verdict.

¶ 8 In 1993, Glenn L. Wells purchased Property 2W from LaVon Day and obtained a title insurance policy. This policy noted as an exception from coverage the right-of-way reserved "for the driving of sheep" through portions of section 35 and 34 in Township 13, where the Left Fork road ran. The policy also noted the 1983 and 1984 reservation of a right-of-way by the owner of Property 1M across portions of Property 2W for access to Property 1M.

¶ 9 After taking possession of Property 2W, Wells began a logging operation and developed more roads on the property. According to Martinez, Wells's logging operation made the historic Left Fork road impassible. When Martinez complained, Wells directed him to use one of the new routes to access his property. During this time, one of Wells's cows was found dead on the road and Wells suspected that a Martinez guest hit and killed the cow while driving the Left Fork road. Wells also accused a Martinez guest of trespassing when that guest allegedly followed a wounded deer onto Wells's property during a hunt. Soon thereafter, Wells became dissatisfied with Martinez's use of the Left Fork road. In an attempt to keep Martinez from using the Left Fork road, Wells purchased land from Pagano that contained the entrance to the Left Fork road and which Wells believed was not subject to any easement.

¶ 10 In 1997, Pagano conveyed to Wells a small portion of the Pagano Property located in the southwest corner of the southwest corner of section 35 (the Pagano access property). This piece of land included an original part of the Left Fork road. Once Wells obtained this property, he sent Martinez a letter informing him:

> I am writing to advise you that I have just purchased the lower portion of the [Left Fork] roadway.... My staff advises me that the locks have now been changed. This property has never been part of [Property 1M and Property 2W] and no easement, by use or otherwise, have [sic] ever been established across this property. As [LeVon] Day will tell you, [LeVon and Donald's] use was by personal permission only. This road and its gate shall be locked at all times and any attempt to enter upon the property will result in criminal trespass charges.

Upon receipt of the letter, Martinez contacted Wells to obtain access to Wells's property by the Left Fork road. Wells refused and Martinez brought suit.

¶ 11 Prior to submitting the case to the jury, the court entertained several motions for directed verdict. The court directed a verdict, finding an express easement in favor of Property 1M across Property 2W. The remaining issues were submitted to the jury. After deliberating, the jury found that Martinez had proven by clear and convincing evidence that a prescriptive easement existed across the Pagano access property. Wells appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 Wells argues that the trial court erred when it granted Martinez's motion for directed verdict, finding an express easement in favor of Property 1M across Property 2W. "In reviewing a [motion for] directed verdict, [we] use the same standard as the trial court, evaluating whether 'the evidence at trial raised a question of material fact which precluded judgment as a matter of law.'" *Pavoni v. Nielsen*, 2000 UT App 74, ¶ 14, 999 P.2d 595 (citations omitted).

¶ 13 Wells also argues that the trial court improperly excluded a letter from Pagano's attorney when it concluded that the letter was inadmissible hearsay. Whether an out-of-court statement constitutes hearsay is a question of law reviewed for correctness. *See Salt Lake City v. Alires*, 2000 UT App 244, ¶ 9, 9 P.3d 769.

¶ 14 Wells next argues that the trial court improperly instructed the jury that "any open and notorious use gives rise to a presumption that the use is adverse and not permissive." "Whether a jury instruction correctly states the law presents a question of law which we review for correctness." *State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444.

¶ 15 Wells finally claims that the evidence is insufficient to support the jury verdict that a prescriptive easement existed across the

Pagano access property or to support the scope of the easement found. "A jury verdict should not be reversed due to insufficient evidence unless the evidence presented at trial is so lacking that reasonable minds could not have reached the conclusion that the jury reached." *Harding v. Bell*, 2002 UT 108, ¶ 14, 57 P.3d 1093.

## ANALYSIS

### I. Property 2W

■ ¶ 16 Wells attacks the directed verdict granting an express easement across Property 2W. Wells does not claim that a factual dispute exists regarding the express easement across Property 2W, but raises the legal argument that the trial court improperly found an express easement when the deeds purporting to create the express easement were ineffective. We disagree.

¶ 17 In 1983, the Day brothers dissolved the Lazy Dazy partnership. LaVon Day took title to Property 2W and Donald Day took title to Property 1M, reserving unto himself a right-of-way across Property 2W to access Property 1M. At the time of the dissolution, Lazy Dazy held title to both properties; however, Donald and LaVon Day named themselves as grantors on the deeds. Wells argues that this was an error that renders these deeds ineffective. Wells also claims that the subsequent deed that seems to correct this error was also ineffective.

¶ 18 "The finding that an easement exists is a conclusion of law" reviewed for correctness. *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998). Likewise, resolution of this issue involves statutory construction which we also review for correctness. *See Shafer v. State*, 2003 UT 44, ¶ 5, 79 P.3d 936.

¶ 19 Utah Code Annotated section 48–1–6 (2001) provides that "[e]very partner is an agent of the partnership for the purposes of its business, and the act of every partner . . . binds the partnership. . . ." Utah Code Ann. § 48–1–6 (2001). Moreover, Utah Code Annotated section 48–1–7 (2001),[2] provides that "[w]here title to real property is in the name of the partnership a conveyance executed by a partner in his own name passes the equitable interest of the partnership." Utah Code Ann. § 48–1–7 (2001).

¶ 20 Reading these code sections together, we conclude that the deeds executed by La-Von and Donald Day in their own names and as partners in Lazy Dazy effectively passed title to Property 1M and Property 2W. The deed transferring Property 2W to LaVon Day reserved in Donald Day a "road right[-]of[-]way over and across portions of [Property 2W] on an existing dirt roadway so as to provide grantor with ingress and egress to [Property 1M]." This deed was recorded and put all subsequent buyers, including Wells, on notice that Property 2W was subject to an express easement. Thus, once the trial court resolved the legal dispute regarding the effectiveness of the 1983 and 1984 deeds, the trial court properly granted a directed verdict determining the existence of an express easement across Property 2W. *See Pavoni v. Nielsen*, 2000 UT App 74, ¶ 14, 999 P.2d 595 (noting that a directed verdict is proper when there is no factual dispute).[3]

### II. Pagano Access Property

■ ¶ 21 Next, Wells argues the jury's verdict that Martinez had an easement by prescription across the Pagano access property was not supported by sufficient evidence, that the trial court improperly in-

---

2. Utah Code Annotated sections 48–1–6 (2001) and 48–1–7 (2001) have been in effect since 1921 and were in effect at the time the Days dissolved the Lazy Dazy partnership. We cite to the most recent version of the statute for convenience only.

3. In the alternative, the trial court directed a verdict that an easement by necessity and an easement by implication existed across Property 2W. Wells attacks these findings as well and argues that a factual dispute remains regarding the correct route for the easement by implication

or necessity and that this precludes the direct verdict. We have already concluded that the trial court properly directed a verdict on the express easement across Property 2W, an issue involving only legal matters. Any factual dispute that may exist in the trial court's alternate findings is irrelevant once we determine that the primary basis for granting a directed verdict is correct. Accordingly, we do not address Wells's challenge to the trial court's findings that an easement by necessity and an easement by implication existed across Property 2W.

structed the jury, and that the trial court improperly excluded relevant evidence. Each of Wells's arguments relate in some way to whether the prior owners of Property 1M or Property 2W used the Pagano access property with or without permission. Permission is relevant because in Utah, "[a] party claiming a prescriptive easement must prove that his use of another's land was open, continuous, and *adverse* under a claim of right for a period of twenty years." *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998) (emphasis added). "However, once a claimant has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse." *Id.* "To prevent the prescriptive easement from arising, the owner of the servient estate then has the burden of establishing that the use was initially permissive." *Id.* at 311–12.

### A. Jury Instruction

■ ¶ 22 Wells claims that the trial court erred in giving jury instruction 26, which provides in relevant part that "[u]se of land by a non-owner is ordinarily presumed to be without permission." Instruction 26 then goes on to state that the presumption of permission can be rebutted if "Glenn Wells could [show] that the Pagano [access] property was used with permission."

¶ 23 Wells argues that the instruction is an "incorrect statement of the law and impermissibly shifts the burden of proof on the issue of adversity/permission from plaintiff to defendant." According to Wells, the evidence showed that the Paganos (the party from whom he had obtained title) "opened the road" across the Pagano access property, thus the presumption should be that the use of the road had been permissive. Wells cites *Harkness v. Woodmansee*, 7 Utah 227, 26 P. 291 (1891), *Jensen v. Gerrard*, 85 Utah 481, 39 P.2d 1070 (1935), and other cases in support of his claim.

¶ 24 "Whether a jury instruction correctly states the law presents a question of law which we review for correctness." *State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444. "In determining whether the jury was properly instructed [,] ... a reviewing court must consider all of the jury instructions read together in light of the total evidence before the jury." *State v. Lawson*, 688 P.2d 479, 481 (Utah 1984).

> "Reversal will not necessarily follow the giving of a defective instruction, if, when taken in connection with the other [instructions], the law of the case is fairly given, and no one instruction should be condemned as reversible error, if it appears to be entirely clear as a guide to the jury, when read with the others given in the case.... If two instructions are given on the same subject, they should be considered together, and where two instructions, construed together, fairly state the law, the case will not be reversed for error existing in one of them."

*Sutton v. Otis Elevator Co.*, 68 Utah 85, 249 P. 437, 451 (1926) (quoting Blashfield's Instructions to Juries 170 (1st Ed.)).

¶ 25 At trial, Martinez presented evidence from which the jury could have concluded that owners of Property 1M had been crossing the Pagano access property under a claim of right (e.g., without first obtaining permission) since at least 1944, and Wells introduced evidence to rebut this claim. In light of this conflict in the evidence, we conclude that instruction 26 was warranted by the evidence. Furthermore, the instruction correctly stated the law, as it noted that after twenty years of use the use is presumed to be adverse but that this presumption may be rebutted.

■ ¶ 26 Wells also claims the trial court improperly refused to instruct the jury that both "neighborly accommodation" and the existence of locked gates suggested that the use of the Pagano access property was permissive. The instructions Wells proposed, when read in context, relate to the adversity element of a prescriptive easement. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998). However, we have already established that instruction 26 fully and accurately states the law regarding prescriptive easements. Accordingly, it was not error to refuse to give these additional instructions. *See Summerill v. Shipley*, 890 P.2d 1042, 1045 (Utah Ct.App.1995) ("If an omitted in-

struction is adequately covered by other instructions, it is not error for the trial court to refuse the instruction."). Moreover, Wells had ample opportunity to argue to the jury, and did argue, that the use of the Pagano access property had been merely a "neighborly accommodation" and that the presence of the locked gates was evidence of this accommodation. Thus, Wells has not shown that failing to give the requested instructions prejudiced him. *See id.* "Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *Id.* (quoting *Biswell v. Duncan*, 742 P.2d 80, 88 (Utah Ct.App.1987)).[4]

### B. Exclusion of Letter as Hearsay

■ ¶ 27 Wells offered into evidence a 1989 letter written by a lawyer on behalf of Pagano. Wells sought to admit the letter both for its content and as proof that LeVon Day had notice that his use of the Pagano access property was permissive. Martinez objected, and the trial court sustained Martinez's hearsay objection.

¶ 28 Whether an out-of-court statement constitutes hearsay is a question of law that we review for correctness. *See Salt Lake City v. Alires*, 2000 UT App 244, ¶ 9, 9 P.3d 769. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c).

¶ 29 On appeal, Wells argues that the letter he sought to admit constituted non-hearsay pursuant to Utah Rules of Evidence 801(d)(1) because the author testified at trial and was subject to cross-examination. *See* Utah R. Evid. 801(d)(1). To qualify as non-hearsay under this rule, the declarant must testify at the trial or hearing, be subject to cross-examination concerning the statement,

*and* the statement must either be (a) offered as inconsistent with the testimony, or (b) consistent with the testimony and offered to rebut an express or implied charge of recent fabrication, improper influence, or motive. *See id.* Wells has not satisfied the requirements of Utah Evidence Rule 801(d)(1) because he has not shown that the letter was being offered as inconsistent to previous testimony or that it was being offered to rebut a charge of recent fabrication, improper influence, or motive. Thus, the letter is not admissible as non-hearsay pursuant to rule 801(d)(1).

¶ 30 Wells also argues that the letter should be admitted for the non-hearsay purpose of providing notice to LaVon Day that his use of the Pagano access property was by permission only. However, the letter contains statements made to the author by other persons. These statements are themselves hearsay. Thus, the letter constitutes hearsay within hearsay. *See* Utah R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.").

¶ 31 Wells's argument that the letter serves the non-hearsay purpose of notice to LaVon Day addresses only one level of hearsay. Wells does not provide a valid hearsay exception for the hearsay statements within the letter nor does he argue that the statements therein constitute non-hearsay. Under these circumstances, the trial court properly excluded the letter as inadmissible hearsay.

### C. Sufficiency of the Evidence to Support Prescriptive Easement and Its Route

■ ¶ 32 Wells argues the jury verdict declaring a prescriptive easement across the Pagano access property is not supported by sufficient evidence because any easement that may have arisen across the Pagano access property was abandoned in 1978 when

---

4. Additionally, Wells's emphasis on who "opened the way" is not relevant here because there is no evidence regarding who opened the Left Fork road. The only evidence introduced by Wells was that Pagano maintained the road by removing boulders and clearing a mud slide. Maintaining the road and opening the road are differ-

ent activities and are treated differently under the law. *See Harkness v. Woodmansee*, 7 Utah 227, 26 P. 291, 293 (1891) ("Where a person opens a way for use of his own premises, and another person uses it also without causing damage, the presumption is … such use … was permissive, and not under a claim of right.").

LaVon Day sought permission to use the access. Wells also argues that the evidence does not support the scope and route of the easement ordered by the trial court.

¶ 33 " 'To successfully attack the verdict, an appellant must marshal all the evidence supporting the verdict and then demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is insufficient to support it.' " *Evans v. Doty*, 824 P.2d 460, 468 (Utah 1992) (quoting *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985)). To overcome a jury verdict, a party must marshal "every scrap of evidence that *supports*" the jury's finding. *Neely v. Bennett*, 2002 UT App 189,¶ 11, 51 P.3d 724, (quotations and citations omitted), *cert. denied*, 59 P.3d 603 (Utah 2002).

> [T]he marshaling concept does not reflect a desire to merely have pertinent excerpts from the record readily available to a reviewing court. The marshaling process is not unlike becoming the devil's advocate. Counsel must extricate himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous.

*West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah 1991).

¶ 34 Here, the jury found that no previous owner of the Martinez property had abandoned a right to cross the Pagano access property. Additionally, the jury made factual findings regarding the scope and route of the easement. Specifically, the jury found that the Pagano access property could be crossed by vehicle, horse, or by foot as needed in Spring, Summer, and Fall to "service" the property and cattle on Property 2W. "Service" of Property 2W included "the conduct of any lawful activity on [Property 2W]."

¶ 35 The trial court incorporated each of these factual findings into its order regarding the scope of the easement. Wells challenges these factual findings but has not marshaled the evidence in support of them. Wells simply restates the evidence in a light most favorable to his own position that no prescriptive easement exists across the property and does not assume the "devil's advocate" role as required.[5] *Id.* Wells has not shown us a grave "flaw ... sufficient to convince [us] that the [jury's] finding resting upon the evidence is clearly erroneous." *Id.* Accordingly, we affirm the jury's finding of a prescriptive easement and the court's determination of its scope.

### CONCLUSION

¶ 36 The trial court properly directed a verdict finding an express easement across Property 2W. Further, the trial court properly instructed the jury and the court properly excluded the letter offered by Wells as inadmissible hearsay. Lastly, Wells did not meet his marshaling obligation to challenge the jury verdict. Accordingly, we affirm.

¶ 37 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and NORMAN H. JACKSON, Judge.

---

5. Alternatively, had Wells complied with his marshaling obligation, it is unlikely that we would reverse the jury verdict, as there appears to be sufficient evidence to support the verdict. For example, Martinez introduced evidence that the previous owners of the property crossed the Pagano access property to enter the Left Fork Road since at least 1944 and that during that time they had entered the property under a claim of right. There was no evidence that the original owners of the Property 1M and Property 2W had ever asked permission to cross the Pagano access property but instead had simply used the road because it was the only way to access their property. Donald Day testified that when Pagano told him that he could not use the road, that he tore down the gate or cut the locks and used the road anyway. " 'We accord due deference to the jury as the fact finder and do not substitute ourselves in this role.' " *Evans v. Doty*, 824 P.2d 460, 468–69 (Utah 1992) (quoting *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 793 (Utah Ct. App.1987)).