2005 UT App 339

**George M. LEE and Gerald Lee, Plaintiffs and Appellants,**

v.

**Miles Walter LANGLEY, Robert P. Thorpe, and Ranger Insurance Company, Defendants and Appellees.**

No. 20040308–CA.

Court of Appeals of Utah.

Aug. 4, 2005.

---

Gregory J. Sanders, Kipp & Christian, Salt Lake City, for Appellants.

Julianne Blanch and Trystan B. Smith, Snow Christensen & Martineau, Salt Lake City, for Appellees Langley and Ranger Insurance Company.

Robert P. Thorpe, Grand Junction, Colorado, Appellee Pro Se.

Before Judges JACKSON, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 George and Gerald Lee sued Miles Langley, Robert Thorpe, and Ranger Insurance Co. for false imprisonment, assault, and negligent or reckless endangerment. The trial court dismissed the false imprisonment claims and the jury found for the defendants on the other claims. The Lees appeal various trial court rulings. We affirm.

## BACKGROUND

¶ 2 In 1998, Gerald Lee was twice arrested in Colorado for driving offenses including driving under the influence of alcohol. To obtain bail, Gerald purchased two bail bonds from A–1 Bail Bonds (A–1), a Colorado bail bonding agency owned by Robert P. Thorpe. For each bond, Gerald entered into an identical Bail Bond Application and Contract (col-

lectively the bail contract) with Ranger Insurance Company (Ranger), a Texas bail bond surety that insured the bonds. The bail contract contained the following provisions:

1. Ranger shall have control and jurisdiction over me during the term for which my bail bond(s) is executed and shall have the right to apprehend and surrender me to the proper officials at any time for violation of my bail bond(s) obligations to the Court and Ranger as provided by law.

2. It is understood and agreed that any one of the following actions by me shall constitute a breach of my obligations to Ranger and that Ranger and/or its Agent shall have the right to forthwith apprehend and surrender me in exoneration of my bail bond(s):

a. If I depart the jurisdiction of the court without written consent of the court and Ranger or its Agent.

. . . .

3. If I depart the jurisdiction of the Court wherein my bail bond(s) is posted by Ranger for any reason, and I am captured by Ranger and/or its Agent . . . in a State other than the one in which my bail bond(s) is posted, I hereby agree to voluntarily return to the State of original jurisdiction, and I hereby waive extradition proceedings and further consent to the application of such reasonable force as may be necessary to effect such return.

Using the bonds, Gerald posted bail and was released from state custody.

¶ 3 Gerald violated the terms of his bail by failing to appear for court hearings and by leaving Colorado for Utah. A–1 hired Miles Langley to apprehend Gerald.[1] Langley was licensed as a bail recovery agent in Colorado, but not in Utah. Suspecting that Gerald was in Utah, Langley verified that a Colorado arrest warrant existed for Gerald and proceeded to Utah to apprehend him. Langley

---

[1] Whether A–1 hired Langley was one of many contested issues at trial. As the primary question in this case involves the dismissal of the Lees' false imprisonment claims, we summarize the factual background of this case using the Lees' version of events. *See Hatch v. Davis,* 2004 UT App 378, ¶ 15, 102 P.3d 774 ("On appeal from a motion to dismiss, we review the facts as they are alleged in the complaint. We accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." (quotations and citation omitted) ).

checked in with the Vernal County Sheriff and obtained information that Gerald could be located at his brother George's home in Naples, Utah. Langley proceeded to Naples, where he checked in with Naples police and informed them of his intentions.

¶ 4 Langley went to George's home, where he obtained permission to enter the home by stating that he represented someone who was interested in employing Gerald as a mechanic. At some point Langley shook Gerald's hand, and while he did so he placed handcuffs on Gerald. An altercation broke out between Langley, Gerald, and George, resulting in physical injury to both Gerald and George. Langley took custody of Gerald and removed him from the home to his vehicle, leaving George unconscious on the floor. George awoke and called the police, who arrived while Langley and Gerald were still at the scene. The police issued assault citations to each of the three parties, but required Gerald to accompany Langley or face arrest by them. Langley took custody of Gerald, took him to a Uintah County hospital for examination, and ultimately returned him to Colorado.

¶ 5 The Lees sued Langley, Thorpe, and Ranger for assault and battery, reckless endangerment, and kidnap. The trial court allowed the Lees to present their kidnapping claim to the jury as a claim for false imprisonment, but granted a defense motion for directed verdict on that claim after the close of the Lees' case in chief. The jury ultimately determined that Langley did not assault or recklessly endanger the Lees, rendering the Lees' agency-based claims against Thorpe and Ranger moot. The Lees appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 The Lees challenge the trial court's jury instructions pertaining to the law of arrest. " 'Whether a jury instruction correctly states the law presents a question of law which we review for correctness.' " *Martinez v. Wells*, 2004 UT App 43, ¶ 14, 88 P.3d 343 (quoting *State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444).

■ ¶ 7 The Lees argue that the trial court erred in granting a directed verdict on

their false imprisonment claims. "We review a directed verdict under the same standard employed by the trial court." *Carlson Distrib. Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, ¶ 13, 95 P.3d 1171 (quotations and citations omitted). A directed verdict is appropriate " 'only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor.' " *Id.* (quoting *Five F, L.L.C. v. Heritage Sav. Bank*, 2003 UT App 373, ¶ 12, 81 P.3d 105).

■ ¶ 8 The Lees also argue that the trial court erred when it refused to enter default against Thorpe for failing to appear at trial. We review a trial court's decisions on default under an abuse of discretion standard. *Cf. Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277 ("[A] trial court has broad discretion in deciding whether to set aside a default judgment.").

■ ¶ 9 Finally, the Lees challenge two of the trial court's evidentiary rulings. "Trial courts are afforded broad discretion in determining the admissibility of evidence; thus we will not disturb a trial court's ruling whether to admit or exclude evidence absent an abuse of discretion." *Vigil v. Division of Child & Family Servs.*, 2005 UT App 43, ¶ 8, 107 P.3d 716.

## ANALYSIS

### I. Jury Instructions

¶ 10 The Lees first argue that the trial court incorrectly instructed the jury on the law of arrest. According to the Lees, Langley had no legal authority to arrest Gerald Lee. We disagree. Langley's authority to arrest Lee arose from the bail contract, and that authority existed even if its exercise by Langley, an unlicensed bail enforcement agent, was illegal. *Cf. Mosley v. Johnson*, 22 Utah 2d 348, 453 P.2d 149, 152 (1969) (stating that an unlicensed well driller would be entitled to retain personal property obtained in payment on drilling contract, even though contract was void due to driller's lack of license).

¶ 11 Arrests by bail sureties are addressed in Utah Code section 77–20–8.5. *See* Utah Code Ann. § 77–20–8.5 (2003). That statute, as it existed at the time of Langley's arrest of Gerald Lee, stated that "[f]or the purpose of surrendering the defendant, the sureties may arrest him at any time before they are finally exonerated and at any place within the state." *Id.* § 77–20–8.5(2) (1999). However, the statute further provided that "[a] surety acting under this section is subject to the provisions of Title 53, Chapter [11], Bail Bond Recovery." *Id.* § 77–20–8.5(3).

¶ 12 Utah's Bail Bond Recovery Act (the Act), *see* Utah Code Ann. §§ 53–11–101 to – 124 (2002),[2] sets up a licensing scheme for bail enforcement agents and provides that a person may not "act or assume to act as, or represent himself to be, a licensee unless he is licensed[.]" *Id.* § 53–11–107(2). The act of arresting a person upon a bail bond without possessing a Utah bail enforcement agent's license is a class A misdemeanor. *See id.* § 53–11–124 (2002); *State v. Norton,* 2003 UT App 88, ¶¶ 1,7, 67 P.3d 1050 (affirming convictions under the Act where defendant "was not licensed as a Bail Recovery Agent or Bail Enforcement Agent, as required under the Act"). It is undisputed for purposes of this appeal that Langley did not possess a Utah license pursuant to the Act.

■ ¶ 13 In order for a statute to render an arrest lawful, the arrest "must be effected in accordance with statutory dictates." *McFarland v. Skaggs Cos.,* 678 P.2d 298, 302 (Utah 1984). Because Langley was unlicensed in Utah, his arrest of Lee was illegal under the Act and therefore not authorized by section 77–20–8.5. *See* Utah Code Ann. § 77–20–8.5(3) (1999).

■ ¶ 14 Despite this lack of statutory authority, the trial court properly instructed the jury that Langley had "the power to lawfully make an arrest" if it found that Langley was acting on Ranger's behalf. Lee contracted with Ranger to allow Ranger "to apprehend and surrender [him] to the proper officials at any time for violation of [his] bail

bond(s) obligations." Lee's contractual submission to Ranger's authority to apprehend him, which was not limited in geographical scope and expressly contemplated Lee's apprehension outside of Colorado, did not condition Ranger's arrest authority on the state licensing status of any eventual enforcement agent.

¶ 15 While the bail contract would not relieve Langley from criminal liability under the Act, it does preclude Lee from arguing in this civil action that Ranger—and by extension Langley—had no authority to apprehend him in Utah. *Cf. Snyder v. Lovercheck,* 992 P.2d 1079, 1087 (Wyo.1999) (holding that when a conflict arises between parties to a contract regarding the subject matter of that contract, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon"). Lee personally and expressly authorized his apprehension by Ranger or its agent. Ranger relied on that authority to secure Lee's initial release from custody, and Langley relied on that authority to effectuate Lee's arrest. Under these circumstances, the trial court properly instructed the jury that Langley had the authority to arrest Lee if he was acting upon Ranger's delegation. This is particularly so when it is uncontested that Langley would have had statutory authority to arrest Lee but for his lack of a license. *See also* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 36 at 226 (5th ed.1984) (licensing statutes create no liability if the actor is competent but unlicensed).

¶ 16 The only potential error we can identify in the jury instructions involves the trial court's use of the legally significant word "arrest" rather than the contractual term "apprehend." Arrest implies the sanction of the state in a way that apprehend may not, and there may be certain privileges or defenses available to a party acting under statutory arrest authority that are not available to one merely acting under contract. However, the Lees do not argue that this distinction had any reasonable likelihood of affecting the

2. The Act has not been amended in any relevant way since the date of Lee's arrest. We cite to the

most current version for convenience.

jury's verdict, nor do we see any such likelihood. Accordingly, any misuse of the word arrest in the jury instructions is at most harmless error. *See Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553 (" 'Harmless error is defined as an error that is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.' " (citation and alteration omitted) ).

¶ 17 We conclude that Gerald Lee's express contractual agreement authorized Ranger or its agent to apprehend him and bars him from complaining that the apprehension in fact occurred. Accordingly, for purposes of this tort action, the trial court properly instructed the jury that Langley's arrest of Lee was lawful so long as it was on behalf of Ranger. Lee has alleged no other error in the jury instructions.

## II. Directed Verdict

¶ 18 The Lees further argue that the trial court erred in granting a directed verdict against each of their claims for false imprisonment. We disagree.

¶ 19 "False imprisonment is an act 'intending to confine the other ... within boundaries fixed by the actor,' which 'results in such a confinement' while 'the other is conscious of the confinement or is harmed by it.' " *Tiede v. State*, 915 P.2d 500, 503 n. 4 (Utah 1996) (alteration in original) (quoting Restatement (Second) of Torts § 35 (1965)). "[F]alse imprisonment occurs whenever there is an unlawful detention or restraint of another against his will." *Mildon v. Bybee*, 13 Utah 2d 400, 375 P.2d 458, 459 (1962).

¶ 20 We have already concluded that Langley's apprehension of Gerald Lee was lawful so long as Langley was acting as an agent of Ranger. The Lees asserted that Langley was Ranger's agent in their complaint, and Langley's deposition testimony

further established at trial that he was acting pursuant to Gerald Lee's contract with Ranger. Accordingly, the trial court did not err in concluding that Gerald Lee's detention was lawful and that his claim for false imprisonment could not proceed.[3]

¶ 21 The sole basis for George Lee's false imprisonment claim is his allegation that Langley knocked him unconscious during their struggle. Lee presents no authority for his proposition that a claim for false imprisonment arises any time an altercation results in unconsciousness. Even assuming that unconsciousness can be equated with confinement, Lee presented no evidence that Langley intended to confine him, as required to make out a claim of false imprisonment. *See Tiede*, 915 P.2d at 503 n. 4. Under these circumstances, the trial court acted properly when it directed a verdict on George Lee's false imprisonment claim and allowed him to seek damages from the altercation under his other theories of assault and endangerment.

## III. Failure to Enter Default and Evidentiary Rulings

¶ 22 The Lees' remaining arguments challenge the trial court's refusal to enter default against Thorpe, its exclusion of Langley's prior admission that he was not licensed as a bail bondsman in Utah, and its exclusion of a receipt signed by Thorpe that evidenced Thorpe's hiring of Langley. We determine that these alleged errors amount to, at most, harmless error.

¶ 23 An error is harmless when "there is no reasonable likelihood that it affected the outcome of the case." *Price v. Armour*, 949 P.2d 1251, 1255 (Utah 1997). There appears to have been no dispute in this case that Langley was licensed as a bail agent in Colorado, but not in Utah. Even if there was a factual dispute as to this issue, we have determined that Langley's Utah li-

---

3. Alternatively, the bail contract manifests Lee's consent to being apprehended, which necessarily includes the concepts of confinement, detention, and restraint. No intentional tort will lie where the plaintiff consents to otherwise tortious activity. *See Lounsbury v. Capel*, 836 P.2d 188, 192–196 (Utah Ct.App.1992) (discussing intentional tort of battery as requiring a lack of consent).

While we are aware that there might be circumstances under which public policy precludes consent as a tort defense, this case does not present such circumstances. Bail contracts do not violate public policy; to the contrary, they have become integral to the efficient administration of our criminal justice system.

censure status was irrelevant to the Lees' tort claims against him. We are unconvinced that any error in the exclusion of this evidence resulted in a reasonable likelihood of a different outcome for the Lees. Accordingly, any error is harmless.

¶ 24 The Lee's remaining arguments address issues relating to Thorpe and Ranger's vicarious liability for the actions of Langley. All of the Lees' tort claims against Langley were rejected either by the trial court or by the jury, and we have affirmed those decisions on appeal. Vicarious liability does not exist apart from the liability of some putative primary tortfeasor, in this case Langley. *See Mann v. Wadsworth*, 776 P.2d 926, 928–29 (Utah Ct.App.1989) ("[S]ince Watkiss & Campbell's liability under respondeat superior is vicarious, it does not exist apart from Wadsworth's liability. The jury held Wadsworth not liable, and the same result must, therefore, also obtain for Watkiss & Campbell."). Accordingly, because the Lees could not establish liability against Langley, they could not establish vicarious liability against Thorpe or Ranger as a matter of law. Any error in the trial court's refusal to default Thorpe [4] or admit the receipt signed by Thorpe into evidence therefore could not have been reasonably likely to affect the outcome of the proceeding.

## CONCLUSION

¶ 25 The trial court properly concluded that Lee could not dispute Langley's authority to arrest him under the bail contract despite Langley's lack of a Utah bail enforcement agent license. The trial court also properly dismissed both George and Gerald Lee's claims for false imprisonment. The Lees' other claims of error constitute, at most, harmless error.

¶ 26 Accordingly, we affirm.

---

4. "There is an important distinction between a default and a default judgment[,]" and "the entry of a default does not automatically entitle a plaintiff to a default judgment for the damages claimed in the complaint." *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998). "To enter a default judgment for unliquidated damages, a judge must review the complaint, determine whether the allegations state a valid

¶ 27 I CONCUR: NORMAN H. JACKSON, Judge.

¶ 28 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

claim for relief, and award damages in an amount that is supported by some valid evidence." *Id.* In this case, even if Thorpe had been defaulted, the Lees' complaint does not "state a valid claim for relief" against him in light of the jury's verdict in favor of his alleged agent, Langley. *Id.* Accordingly, no judgment would ever have been entered against Thorpe even if he had been defaulted.